[No. 3036.   Decided February 18, 1899.]

*In the Matter of the Estate of* RUDOLPH GORKOW, *Deceased:   Petition of* ARTHUR KORNETZKY.

EVIDENCE — NON-EXPERTS — WILLS — TESTAMENTARY CAPACITY —

PROVISION FOR CHILD—IDENTITY OF LEGATEE—CONTEST OF WILL—

ALLOWANCE OF EXPENSES—RIGHTS OF ILLEGITIMATE CHILD.

The admission in evidence of the testimony of a non-expert witness as to his opinion of the mental capacity of a testator, after stating the facts and circumstances upon which his opinion is based, and requiring the extent and nature of his knowledge of the testator to be probed on cross-examination, is not error, as the extent of such knowledge affects the witness's credibility and not his competency.

A lack of testamentary capacity is not shown by testimony establishing that the testator was a physical wreck and totally devoid of moral nature and natural affection, where it appears that testator in his life time possessed great capacity as a money maker, and at the time of his death knew fully what property he had and what disposition he wished to make of it.

Under Bal. Code, § 4601 (1 Hill's Code, § 1465), providing that a deceased parent should be deemed to have died intestate as to any child not named or provided for in the will, a will providing for an illegitimate child, who had been recognized as a son, by other than his real name, satisfies the statute, when there was no other child, and it is evident that such son was in the mind of the testator.

In an action by a child to set aside a will, where there is probable cause for contesting its validity, it is not error for the court, upon confirming the will, to make an order allowing expenses and attorney's fees to the contestant.

Where an illegitimate child has been recognized by his father in writing, he becomes as much the heir of his father, under Bal. Code, § 4624, as a legitimate child, although his parents may never have intermarried. and. if the father die, leaving no widow, such child is as much entitled as one born in wedlock to the possession of the homestead and to an allowance for support pending the settlement of the estate.

Appeal from Superior Court, Spokane County.—Hon. LEANDER H. PRATHER, Judge.   Modified.

*Nash & Nash*, and *John R. McBride*, for appellant.

*Henley, Kellam & Lindsley*, and *John B. Hess*, for respondents.

The opinion of the court was delivered by

REAVIS, J.—In July, 1896, Rudolph Gorkow died at the city of Spokane, leaving an estate worth from one hundred to one hundred and fifty thousand dollars and a prosperous business, consisting of a plant and appliances for brewing and selling beer. He was about sixty-four years of age, and a German by birth. He was married in Germany and several children were born there, but none survived their infancy, and his German wife died in Spokane about two years before his death. In the fall of 1896 he married a second time, and after a few months he and his second wife separated, and an action instituted by him for divorce was pending at the time of his death. Ten days before his death he executed a will. The petitioner, Arthur Kornetsky, was the illegitimate child of one Martha Kornetsky, who was the niece of Gorkow's former wife. She came from Germany in the latter part of 1888, and while at Gorkow's house was seduced by him. The former wife was then living, and survived until the latter part of the year 1894. The will of Rudolph Gorkow was executed in due form and was properly attested, and by its provisions his second wife, Helena Gorkow, was devised one dollar, and "Otto" Kornetsky, son of Martha Kornetsky, $2,000; and after bequests of $5,000 to each of the two executors, who were also employees of Gorkow, and various other bequests to employees and servants of from a few hundred dollars to three thousand dollars each, Gorkow directed his estate to be converted into money in such manner and at such times as the executors should deem best, and the residue thereof, after the payment of his debts and legacies, he

bequeathed to two brothers, or their descendants *per stirpes* in Germany. The contest by Helena Gorkow of the will was compromised by the executors by the settlement and agreement to pay to her $17,000. In 1897 the petitioner, Arthur Kornetsky, the natural son, by his mother as guardian, now Martha Schultheiss, filed his petition in the superior court, alleging that he was the son of Rudolph Gorkow, alleging facts as to his parentage and birth, and that the deceased had acknowledged him in writing, properly executed, to be his son and heir, and that he had not been named in the will in his character as son and heir, but mentioned as a stranger only; and also alleging the invalidity of the will, founded on the alleged testamentary incapacity of the deceased and undue influence on the part of the employees, the executors and others, in procuring the execution of the will. The executors denied the allegations of the petition, and a trial was had, lasting two or three weeks, and a large mass of testimony was taken, which is brought here in the record. A jury was called and sworn, and, in response to special questions, returned the following verdict:

" 1. Was Rudolph Gorkow, deceased, at the time of making and executing the will contested herein, of sound and disposing mind and memory and understanding and capable of making and executing the will in question? Answer—Yes.

" 2. Was the will herein contested the voluntary act of the said Rudolph Gorkow, deceased? Answer—Yes.

" 3. Was the will herein contested, of Rudolph Gorkow, deceased, produced by undue influence? Answer—No.

" 4. Did the said Rudolph Gorkow, deceased, in his life time, in any writing signed by him in the presence of a competent witness, acknowledge himself to be the father of the petitioner herein, Arthur Kornetsky? Answer—Yes.

" 5. Was Rudolph Gorkow in such a mental state,

when he executed the will in question, as to be able to know and understand its contents ?    Answer—Yes.

" 6.    Did he know and understand the contents of said will at the time of its execution ?    Answer—Yes.

" 7.    Was the will correctly interpreted to the testator, at the time he executed it ?    Answer—Yes.

" 8.    Was Rudolph Gorkow, at the time he executed the will in question, in such a mental condition as to be able to know and understand the ordinary business transactions of equal complexity and importance ?    Answer—Yes."

The jury also returned a general virdict for the proponents of the will.    The superior court adopted the special findings of the jury, and thereupon rendered judgment sustaining the will.    The petitioner also presented to the superior court a claim for allowance of expenses and attorney's fees in the suit, and demanded that the homestead and other property exempt from execution be set apart to him under the statute, and for allowance pending the settlement of the estate.    The court, by order, allowed reasonable attorney's fees and other expenses in the suit, but refused to set apart the exempt property and homestead or any allowance to petitioner, as the child of Rudolph Gorkow, pending the settlement of the estate. The executors appealed from that part of the order allowing expenses in the suit and attorney's fees, and the petitioner from that part of the order refusing to set apart the exempt property and homestead and a further allowance to petitioner pending the settlement of the estate.

The following statutes of the state are pertinent here:

" Every illegitimate child shall be considered as an heir to the person who shall in writing, signed in the presence of a competent witness, have acknowledged himself to be the father of such child, and shall in all cases be considered as heir of his mother, and shall inherit his or her estate, in whole or in part, as the case may be, in the same manner as if he had been born in lawful wedlock; but he shall not be allowed to claim, as representing his father

or mother, any part of the estate of his or her kindred, either lineal or collateral, unless before his death his parents shall have intermarried, and his father, after such marriage, shall have acknowledged him as aforesaid, and adopted him into his family, in which case such child and the legitimate children shall be considered as brothers and sisters, and on the death of either of them intestate, and without issue, the others shall inherit his estate, and he theirs, as heretofore provided in like manner as if all the children had been legitimate, saving to the father and mother, respectively, their rights in the estates of all the said children, as provided heretofore, in like manner as if all had been legitimate." Section 4624, Bal. Code (1 Hill's Code, § 1484).

"When a person shall die, leaving a widow, or minor child or children, the widow, child or children, shall be entitled to remain in possession of the homestead, and all of the wearing apparel of the family, and of all the household furniture of the deceased; and if the head of the family in his lifetime had not complied with the provisions of the law relative to the acquisition of a homestead, the widow, or the child or children, may comply with such provisions, and shall be entitled on such compliance to a homestead as now provided by law for the head of a family, and the same shall be set aside for the use of the widow, child or children, and shall be exempt from all claims for the payment of any debt, whether individual or community. Said homestead shall be for the use and support of said widow, child or children, and shall not be assets in the hands of any administrator or executor for the debts of the deceased, whether individual or community." Section 6219, Bal. Code (2 Hill's Code, § 972).

The petitioner, Arthur Kornetsky, has also appealed from the judgment in favor of the proponents sustaining the validity of the will.

1. Counsel for the petitioner have assigned numerous errors upon the judgment sustaining the validity of the will, but very few of which it is profitable to specify here.

We are satisfied with the instructions of the superior court to the jury, and it is immaterial, in the consideration of the case, to determine whether proceedings under the statute to contest the will are in their nature legal or equitable, for the court adopted the findings of the jury. The errors assigned by counsel on the reception of the non-expert testimony are not entirely sustained by the facts. The court held that the non-expert witness should first state the facts and circumstances upon which his opinion was based, and that the extent and nature of the witness's knowledge of the testator was for cross-examination, and could go only to the credit of the witness. This cannot be said to be error. The better rule is, upon the request of counsel, to allow such cross-examination of an expert witness whose testimony is tendered, before the witness shall express his opinion, as will satisfy the court that such witness is competent to testify. But it is, after all, a question of convenient procedure, and the competency of the witness to express an opinion is much in the sound discretion of the court.

There is a substantial conflict in the testimony relative to the testamentary capacity of the deceased, and the question whether undue influence was used upon the deceased in the execution of the will. But the material conflict in the evidence is between expert witnesses (physicians), who gave opinions as to the capacity or incapacity of the deceased; and also non-expert witnesses, who were permitted to state, from their acquaintance and contact with and personal knowledge of the deceased, their opinion of his capacity.

The substantial facts, without controversy, shown were, that the deceased was a man of violent and ungovernable passions; that he was inordinately dissipated; that his acts evinced a total want of moral nature and natural affection; that he had for a number of years preceding his

death been the subject of several painful maladies, some of them incurable, and that physically his system was completely wrecked; that he required a body servant for a considerable time constantly in attendance; that his second marriage was eccentric, foolish and, from every reasonable standpoint, reprehensible. In fact, it may be conceded from the whole testimony that deceased, as stated in the rather vigorous language of counsel for petitioner, was "a moral leper," and that the inference might reasonably be drawn from all these facts that his mental vigor was impaired. Indeed, the record does not disclose any particular mental capacity or traits in the deceased except the ability to make and take care of money during his life. But the capacity required for a will is very well summed up and stated, as the deduction from a long line of recognized authorities, by Judge Redfield in the following language:

" The result of the best considered cases upon the subject seems to put a quantum of understanding requisite to the valid execution of a will upon the basis of knowing and comprehending the transaction, or, in popular phrase, that the testator should at the time of executing the will know and understand what he was about." 1 Redfield, Wills, 124 *et seq.*

And again, in *Clapp v. Fullerton*, 34 N. Y. 190 (90 Am. Dec. 681):

" The right of a testator to dispose of his estate depends neither on the justice of his prejudices nor the soundness of his reasoning. He may do what he will with his own; and if there be no defect of testamentary capacity, and no undue influence or fraud, the law gives effect to his will, though its provisions are unreasonable and unjust."

*In re Mitchell's Estate,* 43 Minn. 73 (44 N. W. 885):

" It is a testator's privilege to make such disposition of his property as he pleases, and, if the will is his,—that is, if it is the voluntary act of a competent testator,—it must stand, if properly executed in form."

In *Potter v. Jones,* 20 Ore. 239 (25 Pac. 769), it was said:

" It may be harsh, and, under some circumstances, cruel to disinherit one child and to distribute the estate among the others, but if the testator be of sound mind and execute his will as prescribed by law, no court can interfere."

And *In re McDevitt,* 95 Cal. 17 (30 Pac. 101), it was said:

" But the right to dispose of one's property by law is most solemnly assured by law, and is a most valuable incident to ownership, and does not depend upon its judicious use. The beneficiaries of a will are as much entitled to protection as any other property owners, and courts abdicate their functions when they permit the prejudices of a jury to set aside a will merely upon suspicion, or because it does not conform to their ideas of what was just and proper."

In *Boughton v. Knight,* 6 Moak, Eng. Rep. 349, Sir John Hannen said:

" He may disinherit either wholly or partially his children and leave his property to strangers to gratify his spite, or charities to gratify his pride, and we must give effect to his will, however much we may condemn the course he has pursued."

It appears from the testimony that deceased established, built up and conducted a brewery business in the city of Spokane; that he accumulated a considerable fortune; that in his temper he was always morose, sullen, and at times violent; that he had no respectable associates among his own nationality in the city, if indeed anywhere, or among any class; that he mingled but little with the public, except as business brought him in contact with any one; that his evenings were frequently spent in the vilest resorts of the city. But it also appears that all the while he prospered in his business; that with tenacious obsti-

nacy, until the period of his death, he kept his checks and balances on all his employees and kept his money locked in a safe, of which no one but himself knew the combination. The will does not in itself afford any inferences of incapacity. He seems to have known what estate he had, and to have known what he wanted to do with it; and this fulfills the measure of testamentary capacity, unless there was undue influence deceiving him or overcoming his will. It cannot be said from the testimony that this was established. The income from the brewery business, at the time he died and since, has been several thousand dollars a month. The will provided that the executors should continue this business, indicating that the testator's judgment deemed a continuation of the business valuable. It was also directed in the will that the employees who had been made legatees should not leave the employ of the executors until two years, under penalty of forfeiture of the legacy; and, further, the executors were directed to pay no more compensation to employees than the ordinary scale of wages in such business. These provisions rather indicate care and that the testator, in unison with his uniform course as a money-getter, made directions to carry out after his death in harmony with his general character. Upon the whole record, the judgment of the superior court sustaining the validity of the will must be affirmed.

2. It is urged by counsel for appellant that, under § 4601, Bal. Code (1 Hill's Code, § 1465), petitioner is forgotten; that he was only remembered in the will as the child of Martha Kornetsky, being mentioned as "Otto," instead of his real name, Arthur Kornetsky, and the legacy was to him as the child of Martha Kornetsky, and in no other capacity. But that is certain which can be made certain; there was no such child but this one, and it is evident that the child was in the mind of the testator, and that satisfies our statute. *Bower v. Bower,* 5 Wash.

225 (31 Pac. 598); *In re Barker's Estate,* 5 Wash. 390 (31 Pac. 976).

3.   While it has been urged that the appeals from the orders made by the court are not properly here for review, we think they may be considered and determined.   Applications for the setting aside of exempt property and a homestead in favor of the widow or minor children may be made at any time to the court, and, manifestly, it was proper to make the application for expenses and attorney's fees in the suit at the time it was made.   The order allowing expenses and attorney's fees seems, under the circumstances of the case and the situation of the petitioner, to have been reasonable.

In *Clapp v. Fullerton, supra,* the court said, relative to costs:

" There was probable cause for contesting the validity of the instrument; and, while we think the judgment should be affirmed, it should be with directions that the costs of both parties be paid from the estate."

*Le Fevre v. Le Fevre,* 59 N. Y. 434; *Moore v. Alden,* 80 Me. 301 (14 Atl. 199, 6 Am. St. Rep. 203); *Morse v. Stearns,* 131 Mass. 389; *Seebrock v. Fedawa,* 29 Am. St. Rep. 491 (50 N. W. 270); *Lawrence v. Lindsay,* 68 N. Y. 108.

4.   The superior court denied the claim for an allowance made by the petitioner.   Our statute (§ 6219, Bal. Code, 2 Hill's Code, § 972) is mandatory.   Section 6220, Bal. Code (2 Hill's Code, § 973), also authorizes the court to make such further reasonable allowance out of the estate as may be necessary during the progress of the settlement of the estate.   This allowance, which in amount is in the discretion of the court, is a first charge on the estate.   It is as much for the benefit of the children as for the widow.   *Moore v. Moore,* 60 Cal. 526; *Estate of Moore,* 57 Cal. 437; *Griesemer v. Boyer,* 13 Wash. 171

(43 Pac. 17); *In re Garrity's Estate,* 108 Cal. 463 (38 Pac. 628); *In re Lux's Estate,* 100 Cal. 593 (35 Pac. 341); 1 Woerner, American Law of Administration, § 99; 2 Am. & Eng. Enc. Law (2d ed.), p. 159.

If the petitioner is a minor child of the deceased, within the meaning of § 6219, Bal. Code, he is entitled, from the estate of the deceased, to such statutory rights as are provided in the section, and the solution of this question depends upon his status.   It will be observed that the act which constitutes the illegitimate child an heir to the father, under § 4624, Bal. Code (1 Hill's Code, § 1484), is the acknowledgment of the paternity of such child. The statute then prescribes the effect of such acknowledgment.   There is the fact of illegitimacy and then the acknowledgment of paternity, and thereafter the child shall inherit the estate of his father in the same manner as if he had been born in lawful wedlock.   The statute is remedial.   At common law, the illegitimate child was excluded from the father's estate.   The rule of the common law relative to bastardy was severe, and the penalty inflicted upon the child was to some extent vicarious, as a punishment for the parents.   But our statutes have conformed to more humane views, and evidently intend that the unfortunate child may be relieved from the condition in which he was placed at common law, and, as all remedial legislation, should be liberally construed.   It is said by the court in *Blythe v. Ayres,* 96 Cal. 532 (31 Pac. 915), commenting on similar statutes, that the paternity must be established   by plenary proof, as said by GAR-OUETTE, J., quoting BEATTY, C. J., in the case of *In re Jessup,* 81 Cal. 408 (21 Pac. 976):

" But I adhere to the view so strongly put and so satisfactorily maintained by Justice Works in his opinion, that in cases of this kind the only strictness required is in proof of paternity.   That being satisfactorily established

by plenary proof, I think courts should lean strongly in favor of a finding that the father of an illegitimate child has done what every honest and humane man should be not only willing but eager to do, and what a just law would compel the unwilling to do."

*In re Jessup, supra,* it was held that, after the paternity is established by plenary proof, the acknowledgment in writing need not be made by any formal instrument in writing or by any attesting and subscribing witness; but an instrument in writing, written in the presence of competent witnesses, is a compliance with the statute. It was found by the court, and the testimony abundantly sustained the conclusion, that the testator in his life time acknowledged in writing, in the presence of competent witnesses, that he was the father of the petitioner, and it may be observed, also, that the testimony shows conclusively that petitioner was the illegitimate son of the testator. Then, at the time of the acknowledgment in writing complying with the requisites of the statute, the status of petitioner was fixed. No act thereafter of the father could change it. The son became an heir of his father's estate, and in this case, but for the intervention of the will, the sole heir, and that as completely as if born in lawful wedlock. Morally and legally, the testator was under obligations to maintain and support his child. Does the fact of his death absolve his estate completely from such allowance as the statute provides for the minor children? It has been argued by counsel for respondents that the acknowledgment of the illegitimate child, as provided in § 4624, does not entirely remove the taint of bastardy; that, in order to accomplish that, there must have been after intermarriage between the father and mother of the child and a subsequent acknowledgment by the father, as provided in the same section. But it seems a rather narrow interpretation of the remedial effect of the section to

exclude the petitioner from the rights of a child of his father. It has been seen that the obligation of support and maintenance existed in the father during his life time, and, in the statute requiring an allowance to the minor child, the state has subjected the estate of the deceased to an allowance therefrom for the maintenance and support of the widow or minor child temporarily pending its settlement. There is no widow in question here. There appears no substantial reason for drawing a refined distinction between the acknowledged illegitimate child and the lawful child, as between them and their father's estate. It is not necessary to follow the discussion, and determine whether all taint of bastardy has been removed from the acknowledged child. It is sufficient to hold that he comes within the terms of the statute for an allowance from the estate pending its settlement. Such allowance as prescribed by the statute is within the sound judgment of the court as to the amount.

So much, therefore, of the order as refused the petitioner any rights under § 6219, Bal. Code (2 Hill's Code, § 972), is reversed, and the superior court directed to make such order under said section as shall, in its judgment, be proper, and in all other respects the decree will be affirmed. Neither party will recover costs in these appeals.

GORDON, C. J., and ANDERS and DUNBAR, JJ., concur.