[No. 7674.    Decided March 3, 1909.]

THE STATE OF WASHINGTON, *Respondent*, v. HOWARD CRAIG,
*Appellant.*[1]

APPEAL—DISMISSAL—TIME FOR MOTION.    A motion to dismiss an
appeal because of imperfections in the record comes too late, where
after an oral argument, with the records before him, respondent's
counsel had asked leave to file a brief and stipulated that a reply
brief could be filed, and in his brief submitted the motion to dismiss.

CRIMINAL LAW—DEFENSES—INSANITY—INSTRUCTIONS—CONTRADIC-
TORY AND MISLEADING INSTRUCTIONS—PARTIAL INSANITY.    Upon the
defense of insanity, an instruction is contradictory and misleading
where the jury is told that the defendant would not be accountable
for his crime if he was suffering from mental disease so complete
that every faculty and power of his mind was affected by it, and that
in consequence he was not capable of a single sound, healthy mental
action, although other instructions favorable to the defendant were
given; since it denies to him the defense of partial insanity.

SAME—DEFENSE OF INSANITY—INSTRUCTIONS.    The jury should
be instructed that the test .of defendant's sanity is whether he had
sufficient capacity at the time to distinguish between right and
wrong with reference to the act charged.

[1]Reported in 100 Pac. 167.

CRIMINAL LAW—EVIDENCE—INSANITY—NONEXPERT OPINION. The testimony of nonexpert witnesses is competent to show insanity.

SAME—DEFENSE OF INSANITY—INSTRUCTIONS. Upon the defense of insanity, the power to choose between right and wrong being a relative question of fact to be determined by the jury, any instruction that invites the jury to go further than to answer the question, Had the accused sufficient capacity at the time to distinguish between right and wrong with reference to the act committed? or that leads the jury into unknown paths, is prejudicially erroneous, even though involved instructions may be regarded as more favorable to the accused than those requested; since he was *non compos mentis* and entitled to the protection of the law if he did not have the mental power to choose between right and wrong with reference to the act charged, and if such affection was the efficient cause of the act.

SAME—DEFENSE OF INSANITY—BURDEN OF PROOF—INSTRUCTIONS. Upon the defense of insanity it is proper to refuse to instruct that if the defendant's evidence raises a reasonable doubt as to his sanity, the state must remove the doubt by the preponderance of the evidence.

SAME—EVIDENCE—HEARSAY. It is inadmissible, as hearsay, for a prosecutrix to testify that a third person told her that the accused had said he would not continue relations with her.

Appeal from a judgment of the superior court for Spokane county, Huneke, J., entered March 20, 1908, upon a trial and conviction of a felony. Reversed.

*Geo. A. Latimer* and *Fred Miller*, for appellant.

*R. M. Barnhart, Fred C. Pugh*, and *J. Stanley Webster*, for respondent.

CHADWICK, J.—When this case was called for argument on December 15, 1908, no briefs had been filed by the respondent. The prosecuting attorney of Spokane county appeared, and after oral argument, asked leave of the court to file a printed brief. It was then stipulated that a reply brief might be filed. The record was before counsel at that time. The prosecuting attorney filed a brief, and before entering into an argument on the merits, submitted a motion to dismiss the appeal because of the imperfections of the record. Without entering into either inquiry or discussion

of the points raised, we decide that the motion came too late, and that this case should be decided upon its merits.

Appellant was convicted of a felony, in the superior court of Spokane county. He set up the defense of insanity, and offered testimony on the trial to sustain his plea. The court gave the following instruction:

"You will see, therefore, that if you believe from the evidence in this case that the defendant was insane and that he committed the crime with which he is charged that he may or may not be legally accountable for such crime. If you should find that the defendant at the time the act was committed was suffering from mental disease so complete that every faculty and power of his mind were affected by it and that in consequence the defendant was incapable of a single healthy mental action, then such crime would be the product of an insane mind and the defendant could not be held accountable therefor. On the other hand, if you should find that, at the time the act was committed, the defendant was suffering from partial mental disease, so that he was capable of at least some sound, healthy mental action, then he would or would not be accountable, depending upon whether the act was the product of a sound mental action. If you should find that the defendant committed this crime and that it was the direct product and offspring of diseased mental action, then the defendant could not be held legally accountable therefor. But, on the other hand, if you should find that even though the defendant was suffering with partial mental disease, yet that he was capable of some sound mental action, and that the crime was the outgrowth, the result, the offspring of such sound mental action, then he would be accountable therefor."

Exceptions were duly reserved by appellant, and it is insisted that the court erred in its conception of the law of insanity, when invoked as a defense to crime. It is the privilege of one charged with crime to have the jury instructed upon his theory of defense, in plain and concise language. The instruction complained of is contradictory, inconsistent with itself, and misleading to the jury. The objectionable part of the instruction lies in this: The jury is told that, if

it finds defendant was suffering from mental disease so com-
plete that every faculty and power of his mind was affected
by it, and that in consequence the defendant was not capable
of a single, sound, healthy mental action, then defendant
could not be held accountable for his crime. The remainder
of the instruction may be favorable to appellant, but we
are not called upon to deal with the subject as a purely
abstract proposition. The court was assuming to instruct
the jury upon a defense technical in so far as the layman
is concerned, and the fact that the jury may have been mis-
led by the improper part of the instruction is sufficient to
warrant a reversal of this cause.

The court's instruction is calculated to draw the minds of
the jury entirely away from a consideration of the relation
of the mental condition of the appellant to the particular
thing charged against him. It denies the benefit of the de-
fense of monomania, which may be and usually is the de-
fense set up when insanity is relied upon. A person may
be partially insane on all subjects, and yet be criminally re-
sponsible if he have sufficient capacity to distinguish right
from wrong with reference to the crime committed. On the
other hand, he may be mentally sound upon almost all sub-
jects, with power of rational thought and capacity to meet
the ordinary affairs of life; and yet upon some one or a
particular group of subjects manifest a mental excitement,
either of desire or aversion, that makes him wholly irrespon-
sible within the limit of his aberration.

Confusion has resulted from the failure of some courts to
distinguish between partial insanity in the sense of weakened
or disordered intellect generally, and partial insanity in the
sense of monomania. While the subjects of inquiry suggest-
ed by the instruction given afford an inviting field for the
talent and theory of the alienist, so far as the law is con-
cerned the test is a simple one, and is sustained by authority
without number. "Had the accused sufficient capacity at the
time of committing the act to distinguish between right and

wrong with reference to the act complained of?" is the gen-eral rule adopted by the courts. Clevenger, Insanity, p. 165. The authorities on this subject are too numerous for present citation. They are collected and the principles stated in 12 Cyc. 164; 21 Cyc. 663; 22 Cyc. 1212; 16 Am. & Eng. Ency. Law (2d ed.), 619-621.

Counsel for the state cite *State v. Pike*, 49 N. H. 399, 6 Am. Rep. 533; *Parsons v. State*, 81 Ala. 577, 2 South 854, 60 Am. Rep. 193, to sustain the trial court, but do not con-tend, either in oral argument or in their brief, that the in-struction complained of was proper. They say:

"Respondent does not contend that the foregoing is the true measure of criminal responsibility applicable to the de-fense of insanity. The better rule, we think, is that an-nounced by the English judges in the historic *McNaghten* case and approved by a majority of the courts and text writ-ers of this country to-day, but we do take issue with appellant upon his claim of prejudice. If the giving of the instruc-tion complained of was error, it was error without prejudice, because the instruction given was more favorable to the ap-pellant than the instructions requested by his counsel."

We cannot subscribe to this test. Without going into the merits of the requested instructions, it is enough to say that, while the court could refuse to give the instructions re-quested, he was nevertheless bound to instruct the law of the case. The talent of counsel is not an issue here; the in-struction given to the jury is. It is not only confusing, but it injects issues and directs inquiries on the part of the jury that should have no place in a criminal trial. This is prac-tically conceded by counsel for the state:

"The point we make is this: The doctrine of the *Pike* and *Parsons* cases embodied in the court's charge to the jury is clearly an extension of the rule stated by Clevenger and maintained by counsel because, (1) it included irresistible impulse and authorized the jury to acquit the defendant, even though he knew the act was wrong, if by reason of mental disease he was irresistibly compelled to commit it; (2) it substituted the medical test instead of the legal test, and

authorized the jury to acquit the defendant if the act 'was the direct product of diseased mental action,' without regard to the degree to which the disease had progressed, or the extent to which it had deprived him of knowledge of the nature and quality of his act."

It is for these very reasons that we think this case should be reversed. Appellant did not rely upon irresistible impulse as a defense; it was not before the lower court and is not before us. When a jury of laymen are invited to go further than to answer the question. Had the accused sufficient capacity at the time of committing the act to distinguish between right and wrong with reference to it, they are invited to enter the realm of speculation where even the opinion of the alienist is met by like opinion, and he can find no guide to clear his doubt or direct him toward a truthful verdict.

By the exercise of some ingenuity, a part of the instruction complained of might be extracted from the *Pike* case. That case is a long and somewhat abstruse attempt to qualify the general rule. It, in any event, could have no possible application in this state, for the conclusion of the court is based upon the proposition that the testimony of nonexpert witnesses will not be received to show insanity, and that, when the experts who "knew all that was known on the subject" had expressed an opinion that a man was insane, that fact was fixed, and the court, who was "profoundly ignorant of mental disease," should refrain from submitting to the jury the question of the capacity of the defendant to distinguish between right and wrong with reference to the particular act. In this state the testimony of nonexpert witnesses is competent to show insanity. *State v. Brooks*, 4 Wash. 328, 30 Pac. 147; *Clum v. Barkley*, 20 Wash. 103, 54 Pac. 962; *In re Gorkow's Estate*, 20 Wash. 563, 56 Pac. 385; *Higgins v. Nethery*, 30 Wash. 239, 70 Pac. 489. Hence the force of this authority is destroyed. The *Parsons* case does not, in fact, deny the general rule. The judge writing the opinion

raises a fanciful rather than a real question, whether there may not be "insane persons of a diseased brain who, while capable of perceiving the difference between right and wrong are as a matter of fact so far under the duress of such disease as to destroy the power to choose between right and wrong." The proposition is elaborately discussed, but it would seem that the learned judge could have disposed of it by saying that, insanity being a question of fact, whenever it appeared from all the evidence bearing on the question that a person charged with crime did not have the mental power to choose between right and wrong with reference to the particular act charged, he was of unsound mind, and if such affection was the efficient cause of the act and if he would not have committed the act but for that affection, he should be acquitted; for one with such mind is *non compos mentis* and entitled to the protection of the law. The power to choose must follow a sane knowledge, and power to distinguish is not a creature of its own creation—an abstract theorem to vex the mind, but must be intelligently determined, as a relative question of fact, by the jury.

The doctrine of the cases relied on by the state to sustain the instruction complained of, while having the sanction of one so learned as Mr. Wharton, would bar the trial of the question of insanity in a criminal proceeding, for no judge could get the exact question to be determined before the jury; for if, as he says and as Justice Doe says in the *Pike* case, the courts are adhering to the exploded medical theories of two centuries ago, while science has advanced, his observation that it is "not the business of courts to decide scientific questions; such evidence they must take from experts in science," is well taken. Wharton, Medical Jurisp. 554.

If, in fact, these cases voice an imperfection in the law—a condition which we do not admit, no harm can result to the state or to the accused. Although a person may be convicted upon the one theory, if he became sane and, in the opinion of the physician in charge of the criminal insane, a safe

person to be at large, he may be discharged under § 6, act 1907, p. 33, or by writ of *habeas corpus* avail himself of the opinion of the alienist. On the other hand, under § 10 of the act, notwithstanding an acquittal, the state may subject him to the so-called scientific test, and if then insane, procure his commitment. In so far, then, as we are concerned, whether insanity be a question of science or of law, there should be no objection to the keeping of the law in the law courts, leaving science in control of its undisputed field.

The trial judge in the famous case of *Guiteau* was invited to leave the defined channels and enter a sea of confusion, but reduced the legal proposition now before us to the following:

"The instructions that have been given you impart in substance that the true test of criminal responsibility, where the defense of insanity is interposed, is whether the accused had sufficient use of his reason to understand the nature of the act with which he is charged, and to understand that it was wrong for him to commit it." *Guiteau's Case*, 10 Fed. 161.

The danger of departure from established precedent is well stated by Justice Stone in a dissenting opinion in the *Parsons* case:

"Judicial administration is too real to enter upon such doubtful and dangerous speculations. In the language of Judge Curtis, 'It searches after those practical rules which may be administered without inhumanity, for the security of civil society by protecting it from crime. It inquires not into the peculiar constitution of mind of the accused, or what weakness, or even disorders he was afflicted with, but solely whether he was capable of having, and did have, a criminal intent.' I hold we should take our steps cautiously, in adopting the theories of psychological enthusiasts, lest we disarm retributive justice of all its restraining energy. . . . I regret what I conceived to be a duty to express my views so much at length. On a question of less importance I would not have done so. I have feared, however, and still fear, that the effect of their ruling will be to let in many of the evils which result from allowing the defense of emotional insanity. I acquit them of all intention to alter the rule of this court

on that subject. Still, I think the line cannot be too clearly and sharply drawn, which separates the pitiable, unfortunate victims of diseased mental faculties, from the recklessly depraved, whose chief evidence of insanity is found in the causeless atrocity of their crimes. Human life has become all too cheap; and while we spread the mantle of mercy over the criminally irresponsible, the lawless should be made to feel that the way of the transgressor is hard. The terror of the law may thus become a minister of peace."

Those who invoke this defense are amply favored by the law, and we cannot indorse a doctrine that would lead the jury into unknown paths and make convictions well nigh impossible where the defense of insanity is interposed. Complexity of expert opinion, coupled with involved instructions by the court, has made the defense of insanity most effective to those whose mania begins and ends with the fatal blow, a condition possible in all such cases unless the court by its instructions fixes the minds of the jury upon the concrete question of fact to be decided by it.

Error is also predicated upon the refusal of the court to instruct the jury that if the evidence offered by appellant raises a reasonable doubt as to his sanity, the state must remove the doubt by a preponderance of the evidence. This request was properly refused under the authority of *State v. Clark*, 34 Wash. 485, 76 Pac. 98, 101 Am. St. 1006. The prosecuting witness was permitted to state in chief, over the objection of appellant, that one Cushman had come to her room at the instance of appellant and told her that appellant was not coming to her room any more, and that he (Cushman) had returned later and stayed all night with her. This was hearsay of the most dangerous character, and should have been excluded by the court. After the unchastity of a prosecuting witness is shown, in order to affect her credibility, it would not be improper to permit her to show that the party on trial was the cause of her undoing, but this cannot be done with hearsay evidence.

We find no merit in the other errors assigned by counsel.

The judgment of the lower court is reversed, and this cause remanded for a new trial.

RUDKIN, C. J., FULLERTON, MOUNT, and DUNBAR, JJ., concur.