[No. 15532.  *En Banc.*  September 1, 1920.]

SOUND TIMBER COMPANY, *Appellant,* v. DANAHER
LUMBER COMPANY, *Respondent.*[1]

WITNESSES (122) — IMPEACHMENT — INCONSISTENT STATEMENTS.
Where plaintiff's witness denied, on cross-examination, having a con-
versation with a third person in which he made a statement con-
flicting with his present testimony, it was proper to allow such
third person to testify that the conversation occurred at a certain
time and place, since it tended to contradict his present version of
the matter.

SAME (120) — IMPEACHMENT — TIME AND PLACE OF STATEMENTS.
Failure to fix the time and place of a conversation which a witness
denied having had on cross-examination, does not prevent evidence
of the occurrence of the conversation to impeach the witness, where
the witness denied ever talking with the person in question.

EVIDENCE (37, 49) — RELEVANCY — FACTS RELEVANT TO PARTICULAR
ISSUES — THREATS BY THIRD PERSONS.  In an action by one timber
company against another for damages from fire, evidence of threats
made by members of the I. W. W. is admissible as to the origin of
the fire, there being proof that the fire occurred on the day defend-
ant resumed operations after a strike brought on by I. W. W. mem-
bers, many of whom were in the immediate neighborhood and cap-
able of carrying out their threats.

RAILROADS (110) — FIRES — CAUSE OF FIRE — QUESTION FOR JURY.  In
an action by one timber company against another for damages from
fire started through negligent operation of defendant's logging en-
gine, the question of the origin of the fire is for the jury, where evi-
dence showed threats made by members of the I. W. W. if the log-
ging camps were started, that the fire started on the day defendant
resumed operations, the presence of the men making the threats,
the fact that a stranger was seen apparently in the act of starting
a fire, and that strange men were seen running from the place
where the fire started.

TRIAL (29) — RECEPTION OF EVIDENCE — REBUTTAL.  In an action by
one timber company against another for damages from fire, upon an
issue made that the fire was set out by members of the I. W. W.,
some of whom made threats, evidence offered by plaintiff on rebut-
tal that at least one I. W. W. stated that they desired to avoid fires

[1]Reported in 192 Pac. 941.

is properly excluded, since it did not tend to dispute defendant's testimony.

APPEAL (445)—REVIEW—HARMLESS ERROR—CONDUCT OF COUNSEL. Error cannot be predicated upon an improper remark of counsel during examination of a witness, where the court cautioned the jury against remarks of the attorneys which were not borne out by the testimony.

APPEAL (457) — REVIEW — HARMLESS ERROR — EXCLUSION OF EVIDENCE. The rejection of evidence that would have been only cumulative and of little probative value is harmless error.

TRIAL (24)—RECEPTION OF EVIDENCE—CUMULATIVE EVIDENCE. The rejection of cumulative evidence is discretionary with the trial court.

WITNESSES (78, 81) — CROSS-EXAMINATION — LIMITATION — IMMATERIAL MATTERS. It is proper to sustain objections to questions on cross-examination which touched matters foreign to those brought out on direct examination and were immaterial.

TRIAL (88) — INSTRUCTIONS — CONFUSING OR MISLEADING INSTRUCTIONS. Written instructions telling the jury to disregard statements made by the court during the trial as to the law applicable to the issues, and that the written instructions contained all the law the jury were at liberty to consider, are not objectionable as tending to confuse the jury and cause them to feel at liberty to consider testimony that had been stricken out, another portion of the instructions having told the jury to disregard all evidence stricken out by the court.

Appeal from a judgment of the superior court for Snohomish county, Alston, J., entered February 17, 1919, upon the verdict of a jury rendered in favor of the defendant, in an action for damages to property destroyed by fire. Affirmed.

*Alexander & Bundy,* for appellant.

*R. S. Holt,* for respondent.

BRIDGES, J.—The Sound Timber Company brought this action against the Danaher Lumber Company to recover damages for destruction of property by a forest fire alleged to have been started by sparks permitted to escape, by the negligence of defendant, from its logging locomotive on August 24, 1917. It is alleged

the fire thus negligently started originated on lands being logged by the defendant, and from there was communicated to the plaintiff's adjoining lands. Upon a verdict in favor of defendant and the denial of a motion for a new trial, a judgment of dismissal of the cause of action was entered, from which plaintiff has taken an appeal.

The parties generally were engaged in logging operations. Respondent's camps and logging railroad where the fire originated were on the west side of the Sauk river; while appellant's operations were on the east side of the river. The camps of both parties had been closed down for more than a month on account of labor troubles. Appellant's camp continued closed. Respondent started operations again on August 24, the day of the fire. It appears that one of respondent's railroad engines was equipped for, and was usually fired by, the use of oil, and that it was not provided with a spark arrester, such as is generally used in engines burning coal or wood. Appellant introduced testimony tending to show that, before noon of the day of the fire, this engine was being operated while there were in its fire box live wood coals, and that the sparks were blown off, causing a fire, which, during the afternoon, spread to appellant's works. Respondent, on the contrary, offered testimony tending to show that it did not operate its engines as charged, and that the fire which did the damage complained of was not started by its engine. At any rate, a few minutes before noon of August 24, fire was discovered near the logging railroad over which respondent's locomotive had passed. This fire got beyond control and, during the afternoon and night, burned over a large area of respondent's lands in different directions from the starting point, and finally burned generally in a southwesterly direction.

It is appellant's contention that, not long after the fire started, and while it was burning eastwardly, sparks and live coals of fire were blown across the river and set fire to its property, causing the damage complained of.  One Bauguess, a witness for the appellant, after testifying that, from the place of origin, the fire spread toward appellant's property, and that a strong air current carried smoke, light particles of burning leaves, twigs and moss to appellant's property, was asked on cross-examination, without objection, if, in a conversation with one Johnston, he (witness) said he saw two men running away from the fire (on appellant's land), and that Johnston said, "Why didn't you shoot them?"  The witness answered he did not; that, while he thought he knew Johnston, he never had talked with him.  Thereafter, in respondent's proof, Johnston was permitted, over appellant's objection, to testify that, at a certain place, naming it, two or three days after the fire, the conversation above referred to occurred between Bauguess and himself in the course of a long talk.

Permitting Johnston to thus testify is appellant's first assignment of error.  The whole purpose and effect of the testimony of Bauguess was to show that the fire on appellant's land had been conveyed by live sparks and cinders carried by the wind from the fire on respondent's land; and the testimony objected to was proper, we think, as tending by reasonable inference to contradict his present version of it.  It is an application of the rule that statements made by a witness tending to contradict his present account of the same affair are admissible as affecting the weight and value of his testimony. *French v. Seattle Traction Co.,* 26 Wash. 264, 66 Pac. 404.  Respondent's claim that time and place were not fixed in the question asked Bauguess is unavailing, for the answer of the witness

was of such a character as would of itself excuse a failure to fix the time and place; and immediately thereafter appellant's counsel had Mr. Bauguess repeat; "In regard to conversations with Johnston; I never talked to the man. I think I knew him when he passed by on the locomotive and have spoken to him, but I never talked to him." The purpose of the rule is:

"That the memory of the witness shall be so refreshed by the necessary inquiries as to enable him to explain, if he can and desires to do so. Whether this has been done is for the court to determine before the impeaching evidence is admitted." Wharton's Law of Evidence (3d ed.), vol. 1, § 555; *The Charles Morgan,* 115 U. S. 69.

Clearly, after the witness had repeated that he hardly knew Johnston, and that he had never had a talk with him, there was no error in allowing the testimony of Johnston.

It appears that the camps of each the appellant and respondent contained many members of the Industrial Workers of the World, and that, about a month before the fire, they brought on a strike and caused all of the camps to be closed; that, after the strike commenced, about forty members of the I. W. W. camped at a place about one and one-half miles south of the logging works of appellant and respondent, and that two or three of them also camped near the place where the fire originally started east of the river. Over appellant's objection, the court received testimony that these strikers were daily seen going through the various camps of the respective parties hereto; that they picketed those camps and refused to allow any person to go to work therein; that some of their leaders had stated that the logging camps should not start without their consent, and that, if there was any effort to start them, the lines would fall to pieces by reason of a

chemical poured on them, and that they would destroy other things; that at least one member of that organization had said he preferred "direct action"; that, about the time the fire began, a strange man was seen starting a fire on the appellant's side of the river. It is now claimed that the court erred in receiving all of this testimony.

The appellant had introduced testimony tending to show that the fire was started by the negligent operation of one of respondent's engines. To meet this charge respondent had a right to introduce testimony which reasonably tended to show that the fire had been started in other ways. The real question being tried was the origin of the fire, and any testimony which gave light to that subject was competent. It was, of course, perfectly competent to show that persons not connected with the respondent were camping in the neighborhood and were constantly passing through respondent's works and that the fire may have started through their negligence. The appellant, however, particularly objects to the receipt of testimony tending to show the threats and general conduct of the members of the I. W. W. It may be conceded that evidence of mere isolated threats is generally not admissible, for the reason that it has no tendency to establish the innocence of the defendant; but where, as here, there was proof that the fire occurred on the very day the respondent started its operations in opposition to the wishes of the I. W. W., and that many members of that organization were in the immediate neighborhood and could easily have been present and were in position to carry out their threats, we think the testimony concerning the threats was admissible. It is not necessary that every fact should bear directly on the issue, but it becomes admissible if it tends to prove the issue or constitutes a link in the chain of proof. The rule only excludes evidence

of collateral facts which are incapable of affording any reasonable presumption or inference as to the principal fact or matter in dispute.  In all, or nearly all, of the cases cited by the appellant to this point there was an effort on the part of defendant to prove threats made by some third person, without any showing that such third person was capable of carrying out the threat, or was in that immediate vicinity or neighborhood at the time of the commission of the crime charged against him.  Such is the case of *State v. McLain,* 43 Wash. 267, 86 Pac. 390, 10 Ann. Cas. 321, cited and greatly relied on by the appellant.  It has been held that, where there was a doubt as to who committed the crime with which a defendant was charged, threats made by a third person were admissible in evidence although there was no other evidence on the subject.  *Leonard v. Territory,* 2 Wash. Terr. 381, 7 Pac. 872; *Murphy v. State,* 36 Tex. Crim. 24, 35 S. W. 174; and particularly is such testimony admissible where it is shown that the person making the threat was in the immediate vicinity at the time the crime was committed.  *Hensley v. State,* 9 Hump. (Tenn.) 243; *Commonwealth v. Abbott,* 130 Mass. 472; *State v. Taylor,* 136 Mo. 66, 37 S. W. 907; *Horn v. State,* 12 Wyo. 80, 73 Pac. 705.

The chief question must usually be whether there is sufficient testimony to connect reasonably the person making the threat with the act charged to have been done.  The general rule is clear.  The difficulty is in applying the rule to the testimony.  In this regard every case must stand on its own bottom.  If the testimony objected to is to be believed, we have certain men threatening to destroy property if the logging camps are started without their consent; the starting of respondent's camps against their wishes; the occurrence of the fire on the very day the camps start; the presence of the men making the threats at the time of the fire;

the fact that a stranger was seen apparently in the act of starting a fire; the intimation that other strange men were seen running from the place where the fire originally started; the failure of the testimony to positively and definitely point out the cause of the fire. We concede that it could be argued that this testimony fails to prove that these men started the fire; and so could the contrary be argued. There were, at least, facts sufficient to require the matter to be submitted to the jury. Particularly is this true where, as here, the trial court in instructing the jury called their attention to this testimony and told them that ''the only purpose for which you can consider this testimony is in so far, if at all, as it bears upon the origin of the fire.''

It cannot be said, as a matter of law, that this testi-mony wholly failed to raise any reasonable inference that the men making the threats were connected with the consummation thereof.

Assignments of error Nos. 3, 4 and 14 are disposed of by what has been said under assignment No. 2.

Assignment No. 5 relates to an effort on the part of appellant to present testimony on rebuttal tending to show that at least one of the I. W. W. had, before the fire, stated that they desired to avoid fires and that the members of that organization were friendly with the appellant. The court permitted testimony tending to show the friendliness, but refused that offered for the purpose of showing that they desired to avoid fires. We think there was no error against appellant in this ruling. To prove that the I. W. W. expressed friendliness to the appellant and desired to co-operate in avoiding fires did not tend to dispute respondent's testimony concerning threats and the ability to carry them out.

Assignment No. 15 affects the same general question

and may be noticed here. Appellant requested an instruction to the effect that the jury should not consider any evidence of the presence of members of the I. W. W. at the time of the fire unless they found from other testimony that the fire on the east side of the river was caused by them. It is claimed the court erred in refusing to give this request. The purpose of this requested instruction is not clear to us. It is, however, argued that it should have been given because the fact that the I. W. W. were in the vicinity was an immaterial matter unless there was other evidence tending clearly to point to them as responsible for the fires. If it means this it was too broad. If the request had been to the effect that the mere presence of the I. W. W. would have been immaterial unless there was testimony tending to connect them with the fire, it might have been proper. But we think the court was right in refusing the request as made.

Assignment No. 6 refers to objections made to a remark of opposite counsel in the course of examining a witness. While the remark may not have been altogether proper, it was harmless and could not have prejudiced the jury. Besides, the court in its general instructions cautioned the jury against any remarks made by the attorneys which were not borne out by the testimony.

Assignments Nos. 7, 8 and 9 relate to the rejection of testimony offered by appellant as to the direction of the smoke from the place where the fire originated. The distances and situations of the witnesses were such that any testimony they may have given would have been not only cumulative, but of such little probative value that there was no prejudicial error in rejecting it.

One of appellant's witnesses, and probably one of respondent's witnesses, testified that the fire started

on both sides of the river at about the same time. Appellant offered to prove by one Joy that, on the day of the fire, he was in Seattle, and that the witnesses above mentioned talked with him over the telephone and stated to him that the fire was then burning on the west side of the river, but had not at that time reached the east side thereof. The court rejected this offer. We will not undertake to follow appellant's argument in detail on this question. We have, however, carefully considered it and have concluded the ruling of the court was not erroneous. It was justifiable, among other reasons, because the testimony would have been cumulative. Prior thereto many witnesses for the appellant had testified on this identical subject. It was discretionary with the trial court whether more of like testimony should be received.

Assignment No. 11 refers to the refusal of the court to allow certain questions on the cross-examination of respondent's witness Taylor. He was superintendent of respondent's camp, and in chief had testified that he was at the original fire shortly after it started on respondent's land, and that the wind and smoke were going in a southerly direction and at no time in the afternoon blew across to the east side of the river. On cross-examination, having admitted that, during the progress of the fire, he telephoned to the foreman of a camp of respondent, situated some distance east and on the other side of the river, he was asked if, during that conversation, he did not ask the foreman whether there was fire on the east side, and if the foreman did not ask the witness what should be done about getting out some of the property at that camp, and if the witness did not reply: "I can't tell you anything to do now except to save yourself." Objections to the questions were sustained as not being proper cross-examination. The ruling was right. All the witness had

testified in direct examination was that during the afternoon the wind was not blowing sparks or smoke easterly across the river, but that it was blowing south. The question asked on cross-examination sought to bring out that the witness had asked the foreman if there was any fire east of the river and that he told him to save himself. These questions touched on matters entirely foreign to anything brought out by the direct examination. Besides this, if they had been answered in the affirmative, it would have been entirely immaterial. All the testimony showed that there was a destructive fire on the east side of the river during that afternoon, and there was no showing during what time in the afternoon the telephoning was done. The fact that there was a fire on the east side and that the witness had told the foreman to save himself, could not possibly lend light to the question whether the east side fire came from the west side fire, or whether smoke and cinders were blowing across the river.

Assignment No. 12 presents what we consider a too critical complaint against a portion of one of the instructions to the jury. We think the instruction correct and in no way misleading.

Assignment No. 13 draws in question the concluding language of one of the written instructions, whereby, in effect, the jury were told to disregard statements the court may have made during the trial as to the law applicable to the issues, and that the written instructions contained all the law the jury were at liberty to consider in arriving at their verdict. We think the language complained of not at all erroneous, taken in connection with all of the written instructions, and certainly not objectionable for the reason suggested by appellant, to the effect that the jury might become confused and feel at liberty to consider testimony that had been stricken out; for, in another portion of the writ-

ten instructions, the jury were told to disregard all evidence which had been stricken out by the court.

The 16th assignment relates to the denial of appel-. lant's motion for a new trial, and requires no distinctive consideration.

We do not find any reversible error. The judgment is affirmed.

HOLCOMB, C. J., MACKINTOSH, FULLERTON, MAIN, MOUNT, TOLMAN, and PARKER, JJ., concur.