HERMAN C. HALBACH, *by his Guardian ad litem Beth Marie Halbach, Appellant,* v. LUCKENBACH STEAMSHIP COMPANY, INCORPORATED, *Respondent.*[1]

[1]Reported in 278 Pac. 178.

*George F. Vanderveer, Wm. Martin* and *J. O. Davies,* for appellant.

*Huffer, Hayden, Merritt, Summers & Bucey,* for respondent.

MAIN, J.—The plaintiff, by his guardian *ad litem,* brought this action to recover damages for personal injuries. In the complaint, insanity as a result of the injury for which damages are sought, is alleged. In the answer, the defendant denied many of the allegations of the complaint, including that of insanity, and, as one of its affirmative defenses, pleaded two releases. The reply to the affirmative defense pleaded incompetency at the time the releases were signed. The cause was tried to the court and a jury, and resulted in a general verdict for the defendant. Motion for a new trial being made and overruled, judgment was entered upon the verdict, from which the plaintiff appeals.

The facts necessary to present the questions to be considered upon this appeal, may be briefly stated. July 28, 1926, the steamship, "Julia Luckenbach," owned and operated by the respondent, the Luckenbach Steamship Company, Inc., was being loaded with shingles at a dock in the harbor at Seattle. The appellant, a stevedore, was, at the time, employed in the hold of the vessel. As the sling, which carried the shingles from the scow at the side to the ship and down through the hatchway, was passing through one of the hatchways, it struck a coaming thereof, and a plank or piece of board fell into the hold of the vessel, struck the appellant on the head and fractured his skull. August 5, 1926, while the appellant was in the hospital on account of the injury that he had sustained, he was visited by the claim agent of the respondent. At this time, an agreement was entered into by which

the appellant was to be paid a certain sum per week during his disability, but not for a greater period than a total of eight weeks. August 19 of the same year, the appellant visited the claim agent's office, and a second release was signed, which provided for the payment of a lump sum. Sometime thereafter, the present action was brought for the purpose, as stated, of recovering damages for the resultant injuries which the appellant received when he was struck on the head while working in the hold of the vessel.

The first question to be considered is whether the trial court committed error in refusing to permit nonexpert witnesses, called by appellant, to describe his actions and express an opinion as to his sanity.

During the trial, and as a part of the appellant's case, a number of nonexpert witnesses were called, who had been his friends, neighbors or acquaintances. The court permitted these witnesses to describe the appearance of the appellant, but refused to permit them to testify as to his actions or express an opinion as to whether he was sane or insane. The testimony of one of these witnesses, as it appears in the record, is as follows:

"I am acquainted with Mr. Halbach, and I first saw him along about the 1st of September, 1926, between the 1st and 15th, I should judge. Q. What, if anything, did you see him do after the first time you met him? Describe his actions. A. Well— Mr. Bucey (interposing): I think, if Your Honor please, that is incompetent. He can testify to his appearance. The Court: Objection sustained. Mr. Martin: That is, as to any of his actions? The Court: Yes. Q. How frequently did you see him while you were living in the same hotel with him? A. Well, I have saw him in the neighborhood of about three times is all, since the 19th day of September. It might be four times, but I would not say positively. Not over four times, I am almost sure, but I have seen him three times that I

know of. Q. What, if anything, did you at any of those times see him do that was unusual? MR. BUCEY: I make the same objection. . THE COURT: Objection sustained. Q. I will ask you whether or not he appeared to be normal at the time you saw him? MR. BUCEY: The same objection, if Your Honor please, as asking for a conclusion. THE COURT: Objection sustained to that question. Q. Did you ever have any experience in handling insane people? A. Yes, some. MR. BUCEY: I make the same objection, immaterial. Q. To what extent have you had— THE COURT (interposing): I will sustain the objection to that question. MR. MARTIN: I assume that is on the ground of the witness not being a physician, not being qualified. THE COURT: Yes, that is the ground, not being qualified, not showing any technical knowledge that would entitle him to give his opinion. Q. To what extent have you had experience in dealing with or handling insane people? THE COURT: I think the same ruling will apply. MR. MARTIN: Very well, I think that is all.''

The testimony of the other witnesses was to the same effect, with like rulings thereon. In some of the instances, after the witness had answered as to the appellant's actions or expressed an opinion as to his mental state, the testimony was stricken. When the respondent was putting in its testimony, a number of nonexpert witnesses were called, and these were permitted to testify, not only as to the appearance of the appellant, but also detail his actions and express an opinion as to his sanity. Some of this testimony went in without objection, though there were objections made to a portion of it. The objections appear to be, not on the ground that the testimony was not competent, but on the ground that the same rule should apply to the evidence offered by the respondent as was applied when the appellant was putting in his evidence. This evidence bore directly upon the most vital issue in the case, which was whether the appellant was sane

or competent at the time he signed the releases. It also bore upon the issue, if the jury should find against the releases for any reason, of the amount of the damages.

Whatever the earlier rule may have been, it is now settled in this jurisdiction that the testimony of nonexpert witnesses is competent to show insanity. In *State v. Craig*, 52 Wash. 66, 100 Pac. 167, it is said:

"In this state the testimony of nonexpert witnesses is competent to show insanity." (Citing authorities.)

In *Rust v. Washington Tool & Hardware Co.*, 101 Wash. 552, 172 Pac. 846, it is said:

"The appellant contends that there was error in permitting the nonexpert witnesses, who were fellow passengers on the boat with the respondent, to state their opinions as to the latter's mental condition. These witnesses testified that, at that time, the respondent was not in possession of his mental faculties. But this testimony was based on their observations of his physical condition, his evident suffering, and his incoherent speech, in the light of their acquaintance with his previous condition. They were testifying to facts, and their opinions drawn from facts within their observation, not giving an opinion upon a hypothetical question. Such evidence is admissible. *State v. Brooks*, 4 Wash. 328, 30 Pac. 147; *In re Gorkow's Estate*, 20 Wash. 563, 56 Pac. 385; *Higgins v. Nethery*, 30 Wash. 239, 70 Pac. 489; *State v. George*, 58 Wash. 681, 109 Pac. 114; *State v. Craig*, 52 Wash. 66, 100 Pac. 167; Jones, Evidence (2d ed.), § 364."

Under those cases, the appellant's witnesses, after testifying to their acquaintance and knowledge of the appellant, their observation of him, his actions and conduct, should have been permitted to express an opinion as to his sanity. The ruling of the trial court in this respect was reversible error.

The respondent says that, whether appellant's witnesses should have been permitted to express an opin-

ion upon his sanity, was a matter within the discretion of the trial court, but we do not so understand the decisions of this court above referred to. It may be that the trial court has a discretion in determining whether the witness has shown sufficient knowledge to permit him to express an opinion, but that question is not involved in this case.

It is also said that the evidence was cumulative, and therefore the ruling was not prejudicial. As pointed out, the evidence was upon a vital issue in the case. It was competent testimony, and should have been received. It cannot be said that this ruling was not prejudicial, even though the evidence was cumulative. This is especially true, in view of the fact that the respondent was permitted to introduce the same kind of testimony, some of it over objection. No case has been cited which holds that a substantial amount of material, competent and relevant testimony upon a vital issue in the case may be rejected and the ruling sustained on the ground that the evidence would have been merely cumulative. In *Sound Timber Co. v. Danaher Lumber Co.*, 112 Wash. 314, 192 Pac. 941, it was pointed out that the distances and situations of the witnesses were such that any testimony

". . . they may have given would have been not only cumulative, but of such little probative value that there was no prejudicial error in rejecting it."

The second question relates to the cross-examination of one of the respondent's witnesses. The claim agent was called, and testified fully with reference to each of the releases and also as to appellant's actions, and expressed an opinion as to his sanity. Upon cross-examination, the appellant propounded a question which was objected to because it assumed a fact as true to which the witness had not testified. The fact assumed, however, was in the case by reason

of the testimony put in by the appellant. It appears to us that the ruling unduly restricted the cross-examination, but is not of sufficient moment in itself to justify a reversal.

■ The third question relates to testimony offered in rebuttal. While the appellant's case in chief was being put in, he called a physician who examined him while he was in the hospital and took a blood test which the witness said indicated syphilis. The respondent called expert testimony, and went fully into the question of the effect of syphilis upon the mind of the victim. In rebuttal, the appellant offered an expert witness and desired him to testify as to a test that he had made of the cerebral spinal fluid of the appellant, as bearing upon the question as to whether the appellant's insanity was due to the accident or due to disease. This testimony was rejected, but inasmuch as there was no offer of proof, the error, if there be one, was not preserved.

■ Lastly, there are a number of errors assigned as to the instructions given and the refusal of the court to give certain requested instructions. Instruction number 22, which is complained of, is not before us for review, because no exception was taken to that instruction. As to the other instructions given, we find no substantial error. The instructions requested and refused, so far as it would have been proper to have given them, were sufficiently covered by the instructions given.

The judgment will be reversed and the cause remanded with direction to the superior court to grant a new trial.

FRENCH, MILLARD, and PARKER, JJ., concur.