440

LYDIA CAMERON, *as Guardian of the Estate of John E. Cameron, a Mentally Incompetent Person, Respondent,* v. BENEFIT ASSOCIATION OF RAILWAY EMPLOYEES, *Appellant.*[1]

[1]Reported in 107 P. (2d) 1096.

*Skeel, McKelvy, Henke, Evenson & Uhlmann* and *Frank Hunter,* for appellant.

*Kennett & Benton,* for respondent.

BLAKE, C. J.—Plaintiff brought this action to recover benefits under an "accident and illness income policy" issued by defendant to her ward, John E. Cameron. The cause was tried to a jury, which returned a verdict in favor of plaintiff. From judgment on the verdict, defendant appeals.

Numerous assignments of error are made, the principal of which center around a settlement made with John E. Cameron in consideration of his surrender of the policy to appellant.

In her complaint, respondent alleged that her ward had been "totally and permanently disabled . . . within the illness income provisions of his said policy," and "That from May 24, 1938 . . . the insured has been a totally and permanently mentally incompetent person, . . ." (Cameron was adjudged insane and committed to the Northern State Hospital on November 29, 1938.) In its answer, appellant pleaded the settlement and surrender of the policy by Cameron July 22, 1938. In her reply, respondent alleged that Cameron was not mentally competent to make any settlement at that time or at any time subsequent to May 24th.

The issue of fact presented, therefore, is whether Cameron was so mentally incompetent on July 22, 1938, as to render the settlement abortive.

There is no doubt in our minds that there was

sufficient conflict in the evidence to make the issue one of fact rather than one of law. We do not understand appellant to seriously contend otherwise, although the suggestion is made that respondent's case upon the issue of insanity is based wholly upon the testimony of nonexpert witnesses. This, however, is competent testimony in such cases as this. *State v. Craig,* 52 Wash. 66, 100 Pac. 167; *Halbach v. Luckenbach Steamship Co.,* 152 Wash. 492, 278 Pac. 178.

█ Appellant's principal contention is that the issue upon the validity of the settlement and surrender of the policy was one for determination by the court and not by the jury; that the setting aside or cancellation of a contract for release of liability falls on the equity side of the court; that, therefore, the issue is not triable to a jury, or that, in any event, the verdict of a jury is merely advisory. In the early case of *Sanford v. Royal Ins. Co.,* 11 Wash. 653, 40 Pac. 609, the court met this exact question and decided it adversely to appellant's contention. This case was followed in *Davis v. Atlas Assurance Co.,* 16 Wash. 232, 47 Pac. 436, 885. Since then, in innumerable personal injury actions when a release has been pleaded, the court has held that the validity of the release is a question to be determined by the jury when the plaintiff under his reply submits competent evidence that such release was procured by fraud or by reason of his mental incompetency at the time he executed it. *Bjorklund v. Seattle Electric Co.,* 35 Wash. 439, 77 Pac. 727; *Westby v. Washington Brick, Lime & Mfg. Co.,* 40 Wash. 289, 82 Pac. 271; *Hicks v. Jenkins,* 68 Wash. 401, 123 Pac. 526; *Miller v. Spokane International R. Co.,* 82 Wash. 170, 143 Pac. 981. And in such cases, it is for the jury to say, under proper instructions, whether plaintiff has met the burden of proving fraud or mental incompetency by *clear, cogent, and convincing* evidence.

*Mattson v. Eureka Cedar Lumber & Shingle Co.,* 79 Wash. 266, 140 Pac. 377. Although the *Sanford* case was not cited, the principle there laid down was applied in the case of *Northern Life Ins. Co. v. Walker,* 123 Wash. 203, 212 Pac. 277.

▉ A number of other errors are assigned, only two of which, however, we think require notice. The entire record of the insanity proceedings under which Cameron was committed to the Northern State Hospital was admitted in evidence. The court expressly instructed the jury that nothing in that record could be considered as proof of Cameron's insanity prior to the date of such proceedings. The effect of the record having been so limited, it was not error to admit it in evidence. *Roberts v. Pacific Tel. & Tel. Co.,* 93 Wash. 274, 160 Pac. 965.

▉ It is conceded that Cameron, when committed to the Northern State Hospital, was suffering from senile dementia. A physician who had attended him since prior to May 24, 1938, was called by appellant and testified that, in his opinion, Cameron was sane and competent to transact business up until some time in November—in other words, that he was competent to make the settlement with appellant in July. On cross-examination, counsel for respondent read from the text of a recognized authority on insanity to the effect that senile dementia is a disease of slow progress —sometimes taking years before culminating in the necessity of subjecting the victim to confinement. Appellant's counsel objected to this on the ground that the witness, on direct examination, testified only to facts coming within his observation; that he was asked no hypothetical questions.

We do not understand the rule permitting the reading from recognized authorities to be so restricted. When the witness expressed an opinion as to Cameron's

mental condition, he subjected himself to cross-examination in the light of the opinions of such writers whose works he acknowledged to be recognized by his profession as authoritative on the subject of senile dementia.

Judgment affirmed.

STEINERT, MAIN, ROBINSON, and DRIVER, JJ., concur.

