CHARLES J. HAYDEN & another, trustees, *vs.* FANNIE E. BARRETT & others.

Suffolk. December 5, 1898. — January 9, 1899.

Present: FIELD, C. J., HOLMES, MORTON, BARKER, & HAMMOND, JJ.

*Will — " Heir by Blood " — Illegitimate Child.*

Where a testator plainly intended by the use of the term " heirs by blood " to indicate those persons whose relationship was by some tie of consanguinity, and to exclude all others, such as husband, wife, or adopted children, an illegitimate son must be regarded within the meaning of the will as the " heir by blood " of his mother.

BILL IN EQUITY, for instructions as to the construction of the following portion of the will of Sidney B. Morse:

" Tenth. I give, devise, and bequeath all the rest, residue, and remainder of my property and estate, real, personal, and mixed, ... to ... trustees ... to pay the net income, rents, and profits thereof to my beloved wife Mary Ann Morse during her life, ... and upon her decease to continue to hold ... the same during the term of ten years from said time. ...

"5. To pay three tenths of the income thereof to the children of my brother George H. Morse, viz.: Mary Ann Morse, Fannie E. Barrett, wife of Frank S. Barrett, and Roswell M. Morse, to be equally divided among them, the portion payable to females to be so paid upon their sole receipt and free from the control or interference of any husbands they may have, or in case one or more of them decease prior to the expiration of said ten years to pay the income due to such one or more to his or her or their respective heirs by blood, and at the expiration of said ten years, to transfer, pay over, and convey one of said ten parts so divided as hereinbefore provided to the said Mary Ann Morse, one of said ten parts to the said Fannie E. Barrett, and one of said ten parts to the said Roswell M. Morse; or in case one or more of them are not then living to transfer, pay over, and convey such part or portion to his or her or their respective heirs by blood."

Mary A. Morse, the widow of the testator, died on or about July 11, 1895, and Mary Ann Morse, the niece of the testator, died on or about November 25, 1895.

It was agreed " that the respondent Fannie E. Barrett is the sister, and the respondent Horace E. Morse is the son, of a pre-deceased brother of the Mary A. Morse last mentioned in the petition ; that the respondent Ernest L. Morse is the illegitimate child, born November 24, 1895, of said Mary A. Morse; that said Mary Ann Morse never married, and that she left no father or mother, and no issue, brother or sister, or descendant of any deceased brother or sister, other than the respondents."

The bill alleged that a certain portion of the income now in the hands of the trustees " is by the terms of said clause 5 now payable, and a like portion of the income to accrue during the period of ten years from the death of the testator's widow, and also of the principal of said trust fund at the expiration of said ten years will be payable to the heirs by blood of the said last named Mary A. Morse, deceased."

*Holmes*, J. was of the opinion that the respondent Ernest L. Morse was entitled to the portion of the fund in controversy; but, at the request of the other respondents, reported the case for the consideration of the full court.

*C. P. Lincoln*, for the petitioners, read the papers in the case.

*W. Sullivan*, for the respondent Ernest L. Morse.

*E. G. McInnes*, (*C. A. Whittemore* with him,) for the other respondents.

HAMMOND, J.   The single question is whether under the fifth clause of the tenth item of this will the illegitimate son of Mary Ann Morse takes as her " heir by blood."

By the common law of England and of this Commonwealth a bastard in all matters relating to the inheritance of property was nobody's child, and as to such matters his existence was therefore ignored.   *Cooley* v. *Dewey*, 4 Pick. 93.   2 Dane, Abr. 522, and cases therein cited.   *Pratt* v. *Atwood*, 108 Mass. 40.

And accordingly it is also well settled that, in the absence of any language clearly expressing the contrary, all general words in the statutes of distribution, such as " child," " children," " next of kin," and similar words descriptive of classes who are to inherit, do not include illegitimate children.   *Kent* v. *Barker*, 2 Gray, 535, and cases therein cited.   And so of similar expressions in a Massachusetts will.   *Kent* v. *Barker, ubi supra.   Adams* v. *Adams*, 154 Mass. 290.   *Haraden* v. *Larrabee*, 113 Mass. 430.

If, therefore, the rights of the illegitimate son of Mary Ann Morse depended upon the common law, the decision must be against him.   But for two generations and more it has been the statute law of this Commonwealth that an illegitimate child shall be the heir of his mother, and the tendency of legislation as shown by an amendment to the statute seems to be growing in the direction of change in the common law in this respect more favorable to him.   By our statutes Ernest L. Morse was the heir of his mother, and of any maternal ancestor, and, if the mother died intestate, he, being the only child, was her sole heir as to all her property.   See Pub. Sts. c. 125, § 3.

By the will the property at her death goes to the " heirs by blood."   The illegitimate son, it is true, does not take it by descent from his mother, but, if at all, as the person designated by the will.

In *Lavery* v. *Egan*, 143 Mass. 389, 392, where real estate had been devised to a person for life, with contingent remainder to her heirs, it was decided that the husband of the life tenant took as her heir under St. 1880, c. 211, § 1, which provides that in certain cases a husband shall take in fee the real estate of his deceased wife to an amount not exceeding five thousand dollars in value. In giving the opinion Mr. Justice Field says: "Although in the case at bar the heirs of . . . [the life tenant] do not take from her by inheritance, but take as persons designated by the will, yet we know of no way of determining the persons intended by the will, except by ascertaining the persons who by law would have inherited the estate from her if she had died seised of it and intestate."

Applying that principle to this case, we have no doubt that, within the meaning of the will as interpreted in the light of the statute, the illegitimate child was the heir of his mother, and it only remains to be considered whether he was her heir " by blood " within the meaning of the will.

The expression " heirs by blood " occurs several times in the will. In the first clause of this tenth item the trustees are directed to pay certain income " to my niece Helen E. Howland, daughter of my said sister Caroline Ware Morris, upon her sole receipt and free from the control or interference of any husband she may have, and in case of her death prior to the expiration of said ten years to pay said balance if any to her heirs by blood." And the second clause of said item is as follows : " To pay one tenth of the income thereof to my niece Caroline E. Dutton upon her sole receipt free from the control or interference of any husband she may have, and in case of her death prior to the expiration of said ten years then to pay the said income to her heirs by blood, and at the expiration of said ten years to transfer, pay over, and convey one of said ten parts so divided as hereinbefore provided to the said Caroline E. Dutton, or in case she is not then living to her heirs by blood."

And the same language is used with reference to the legacies to the other nieces and to his nephew, in the same item of the will. All the way through this item the testator was bearing constantly in mind the husbands of these various nieces, and he desired that there should be no control or interference on the

part of any such husband during the life of the niece, and then in the same general line of thought uses language which finally excludes the husband from having any share in the property after the decease of the niece.

It is plain, we think, that the testator intended by the use of the term " heirs by blood " to indicate those persons whose relationship was by some tie of consanguinity, and to exclude all others, such as husband, wife, or adopted children. He intended to keep the property in the family and within the tie of consanguinity, but otherwise was content that the law should determine who should be the heir to any niece.

Within the meaning of the will, Ernest L. Morse was the " heir by blood " of his mother.    *Decree accordingly.*