Cary Beekman, a native of Ohio, some time after reaching manhood, came to this state and settled in Grays Harbor county, where he died, a bachelor, intestate, leaving real and personal property. In the course of the administration of his estate, one Blanch M. Fisher appeared by a petition, alleging that she was an illegitimate daughter of the deceased, Cary Beekman, and that he had, in writing, before a competent witness, acknowledged her to be his daughter; and that she was the only child of the decedent, and was entitled to all his estate, which she asked to be distributed to her. The administrator denied the statements of fact on which the claim of heirship was made. Upon trial of the case, findings and judgment were entered in favor of the petitioner. The administrator has appealed.
The statute, § 1345, Rem. Comp. Stat., provides:
"Every illegitimate child shall be considered as an heir to the person who shall in writing, signed in the presence of a competent witness, have acknowledged himself to be the father of such child, . . ."
[1] Nearly all the testimony in this case related to the understanding of witnesses in the vicinity in Ohio where petitioner was born and still lives, to the effect that Cary Beekman was her father, and oral statements and other conduct on his part, tending to justify that understanding. But the ultimate and controlling question in the case is not whether he was the father of petitioner, but, as the statute puts it, did he ever in writing, signed in the presence of a competent witness, acknowledge himself to be her father. The statute requires an express written acknowledgment of paternity. *Page 671 
The only writing relied on by the respondent arose as follows: The mother of the child appeared before a justice of the peace in Ohio, and made complaint, which was written out in the justice's docket, signed and sworn to by her, to the effect that she was an unmarried woman, resident of that township, and that she was, at that time, pregnant with a child of which Cary Beekman was the father. The docket then recites that a warrant was issued for the arrest of Beekman. The docket is silent as to whether the warrant was served. The docket further shows that, two days after the complaint was made, the complainant appeared and withdrew the complaint; the entry to that effect, signed by the justice of the peace, was that she "does hereby refuse to appear and testify in above case, and asks that prosecution be withdrawn at cost of the defendant." The record then contains an undated entry as follows:
"I, Cary Beekman, and Robert Shanks, do hereby agree to pay above costs and acknowledge ourselves responsible for the same to the amount of two dollars.
 "R.C. Shanks "Cary Beekman."
The contention on behalf of respondent is that the writing thus signed by Cary Beekman, was an acknowledgment in writing that he was the father of the unborn child, the petitioner in this case.
It is not necessary that the acknowledgment in writing required by the statute be made with the intent and for the purpose, on the part of the father, of admitting the illegitimate child to heirship, In re Rohrer, 22 Wn. 151, 60 P. 122, 50 L.R.A. 350; In re Gorkow's Estate, 20 Wn. 563, 56 P. 385; but, manifestly, a writing of the kind and particularity described in the statute is necessary. *Page 672 
A statute of Minnesota providing that an illegitimate child shall inherit "from the person who, in writing and before a competent witness, shall have declared himself to be his father," was construed in the case of In re Snethun's Estate, 180 Minn. 202,230 N.W. 483. In that case, it appeared that, in his lifetime, Snethun, through legal proceedings to which he made no defense, was required to contribute to the support of an illegitimate child. In a subsequent written agreement in the case, duly witnessed, he agreed to pay a lump sum in lieu of periodic payments, in which agreement he acknowledged the liability imposed, but did not acknowledge paternity of the child. The writing was held not sufficient, under the statute, to entitle the child to inherit, the theory of the holding being that the written agreement did not contain an express acknowledgment of the paternity of the child. The opinion in that case cites a number of other cases.
Nebraska and Oklahoma each has a similar statute. The Nebraska cases of Moore v. Flack, 77 Neb. 52, 108 N.W. 143, and Lind v.Burke, 56 Neb. 785, 77 N.W. 444, and the Oklahoma case ofHolloway v. McCormick, 41 Okla. 1, 136 P. 1111, holding the instruments involved in those cases insufficient, say that the writing, to fulfill the requirements of the law, must be one in which the paternity is directly, unequivocally, and unqualifiedly acknowledged.
Respondent, in our opinion, misconceives the legal effect of the writing relied on. It is a case, in that respect, within the rule of Martin v. State, 62 Ala. 119, viz:
"Parties sued, or against whom a claim is preferred, may purchase their peace, or otherwise compromise such claim; and if in such negotiation they make no admission of fact material to the maintenance of the claim asserted, such offer or promise cannot be received in evidence that the claim made was just." *Page 673 
The case just referred to was a bastardy proceeding. To the same effect is the case of Campbell v. Carroll,71 Ind. App. 587, 124 N.E. 407, where an illegitimate child sought to inherit and, as written proof of acknowledgment of paternity, offered the record of bastardy proceedings before a justice of the peace. The record in the bastardy proceedings showed that the parties
"`. . . agree to compromise this cause upon the following terms, to wit: The defendant pays the relatrix the sum of $50 in cash this day and executes two notes of even date herein, for $125 each, payable in one and two years from date, and payable to Martha Carroll, trustee for Nora Carroll, the relatrix herein being under the age of 21 years, and the said trustee being her mother.'"
The supreme court of Indiana in considering that record of the justice of the peace, said:
"There is no admission or acknowledgment of paternity in the record. It may not even be implied from such a record of compromise. Many men would submit to such a wrong as this, if wrong it may be, rather than to submit to the embarrassment of a public trial and the gibes of the rabble who usually gather on such occasions. The acknowledgment must be definite and certain, and must be one in which the paternity of the child is plainly and unequivocally acknowledged."
Considering the plain language of the statute, and the applicable reasoning of the cases to which attention has been called herein, the writing relied on to constitute acknowledgment of the paternity of Mrs. Blanch M. Fisher, is clearly insufficient.
Reversed.
TOLMAN, C.J., HOLCOMB, MAIN, and PARKER, JJ., concur. *Page 674