The main question involved is: May a nonresident illegitimate nominate an administrator under the provisions of subdivision 2 of section 10072, Rev. Codes 1921? We contend that he is not such a "child" as is mentioned in that section or in section 10068, and therefore has not the right of nomination in the present premises.
In McDonald v. Southern Railway, 71 S.C. 352, 51 S.E. 138, 110 Am. St. Rep. 576, 2 L.R.A. (n.s.) 640, the court adopts with approval the following language: "It is a well-recognized rule of construction that prima facie, the word `child' or `children' when used in a statute means legitimate child or children and that bastards are not within the meaning of the term." (See, also, State ex rel. Canfield v. Porterfield,222 Mo. App. 553, 292 S.W. 85; Baker v. Stucker, *Page 247 213 Mo. App. 245, 248 S.W. 1003; Jackson v. Hocke, 171 Ind. 371,84 N.E. 830; Rhodes v. Williams, 143 Ga. 342, 85 S.E. 105;Bell v. Terry Tench Co., 177 App. Div. 123,163 N.Y. Supp. 733; Truelove v. Truelove, 172 Ind. 441, 86 N.E. 1018, 109 Am. St. Rep. 404, 27 L.R.A. (n.s.) 225; McDonald v.Pittsburgh, 144 Ind. 459, 43 N.E. 447, 55 Am. St. Rep. 185, 32 L.R.A. 309; Orthwein v. Thomas, (Ill.) 13 N.E. 564;Marshall v. Wabash R.R. Co., 120 Mo. 275, 25 S.W. 179;Hayden v. Barritt, 172 Mass. 472, 52 N.E. 530, 531, 70 Am. St. Rep. 295; 7 C.J. 959.)
It is apparent that petitioner Kuhne by her offer in evidence of a copy of the alleged court record from Germany [see opinion], seeks to show a compliance with section 7074, Revised Codes 1921. It is perfectly plain that the legislature by that section limited the rights of an illegitimate to the right of inheritance from the mother and the right of inheritance from the father where the father, in writing, signed in the presence of a competent witness, acknowledged himself to be such father. Nowhere in the statute can we find even a suggestion that such rights include the right of nomination given to a "child" by subdivision 2 of section 10072, supra; it is simply a statute of inheritance. We adopted it from California, where it is held to be a statute of descent. (Estate of Magee, 63 Cal. 414;Blythe v. Ayres, 96 Cal. 532, 31 P. 915, 19 L.R.A. 40;Eddie v. Eddie, 8 N.D. 376, 79 N.W. 856, 73 Am. St. Rep. 765.) In Hicks v. Smith, 94 Ga. 809, 22 S.E. 153, it was held: "A bastard who has been legitimized in accord with the provisions of the Code, was not rendered legitimate to the full significance of that term, but only so far as to enable him to inherit from his father." In Pina v. Peck, 31 Cal. 359, which so far as we can find has not been changed nor reversed, the court declared "that a written acknowledgment of the paternity of an illegitimate child which is not executed for the purpose of making such child the heir of the father, will not make the child such heir although it contains all of the matters required by the statute for such acknowledgment." This case also holds that section 1387 of *Page 248 
the California Civil Code, identical with our section 7074, supra, is simply a rule of inheritance and has nothing whatever to do with the status of the child. There is one other statutory provision to which we desire to call the court's attention, and that is section 5865, Revised Codes 1921, reading as follows: "The father of an illegitimate child, by publicly acknowledging it as his own, receiving it as such with the consent of his wife, if he is married, into his family, and otherwise treating it as if it were a legitimate child, thereby adopts it as such and such child is thereupon deemed legitimate for all purposes from the time of its birth." There is no proof in the record of any attempt to comply with the requirements of this section. The record is wholly silent as to any public acknowledgment by Paul Wehr of his illegitimate son. He did not receive the illegitimate as such into his family, nor did he treat it as a legitimate child, nor did he adopt it as such, and it further appears that the illegitimate, in writing the deceased, addressed him as his uncle. The illegitimate does not use or bear the name of Wehr.
Without the status of a "child" as mentioned above any pretended nomination by Paul Noll is of no value whatever. If he had, within this state, the status of a legitimate, his nomination might be considered, but is not binding upon the court. It is only the nomination of the husband or wife that is all-controlling. (In re Blackburn's Estate, 48 Mont. 179,137 P. 381; In re Infelise Estate, 51 Mont. 18, 149 P. 365.) We further call the court's attention to the fact that the issue as presented here is not one that permits of the exercise of a judicial discretion.
Paul Wehr, an unmarried man, died intestate in Fergus county where he had resided for about twenty years, leaving *Page 249 
personal property there situated. His alleged heirs consisted of a sister, Anne Wehr Rupprecht, a nephew, Paul Wehr, and an illegitimate son, Paul Noll Wehr, all residents of Germany. F.R. Cunningham, public administrator of Fergus county, filed application for letters of administration. Subsequently Bertha E. Kuhne, a resident of Fergus county, asked and was granted special letters of administration. Thereafter Anne W. Rupprecht, sister of decedent, through her attorney-in-fact, W.L. Reinhardt, the German consul at Seattle, filed request for the appointment of Cunningham, as administrator, and asking that the special letters to Bertha E. Kuhne be revoked. Still later Bertha E. Kuhne applied for general letters based upon the written request of the illegitimate son. The two applications were heard together. The petition of Cunningham was denied, and that of Bertha E. Kuhne granted. Cunningham appealed from the order. The controversy depends upon which applicant, under the facts presented, was entitled to letters.
Our statute specifying the order in which persons are entitled to letters of administration is section 10068, Revised Codes 1921. So far as material here it provides: "Administration of estate of all persons dying intestate must be granted to some one or more of the persons hereinafter mentioned, the relatives of the deceased being entitled to administer only when they are entitled to succeed to his personal estate, or some portion thereof, and they are, respectively, entitled therein in the following order: 1. The surviving husband or wife, or some competent person whom he or she may request to have appointed. 2. The children. 3. The father or mother. 4. The brothers. 5. The sisters. 6. The grandchildren. 7. The next of kin entitled to share in the distribution of the estate. 8. The public administrator."
Section 10072 in part provides: "No person is competent or entitled to serve as administrator or administratrix who is: * * * 2. Not a bona fide resident of the state; but if a person otherwise entitled to serve is not a resident of the state, and either the husband, wife, or child, or parent, or *Page 250 
brother, or sister of the deceased, he may request the court or judge to appoint a resident of the state to serve as administrator, and such person may be appointed."
The question presented is the effect of section 7074 upon the[1] problem under consideration. It provides: "Every illegitimate child is an heir of the person who, in writing, signed in the presence of a competent witness, acknowledges himself to be the father of such child; and in all cases is an heir of his mother; and inherits his or her estate, in whole or in part, as the case may be, in the same manner as if he had been born in lawful wedlock; but he does not represent his father or mother by inheriting any part of the estate of his or her kindred, either lineal or collateral, unless, before his death, his parents shall have intermarried, and his father, after such marriage, acknowledges him as his child, or adopts him into his family, in which case such child and all the legitimate children are considered brothers and sisters, and on the death of either of them, intestate, and without issue, the others inherit his estate, and are heirs, as hereinbefore provided, in like manner as if all the children had been legitimate; saving to the father and mother, respectively, their rights in the estates of all the children in like manner as if all had been legitimate. The issue of all marriages null in law, or dissolved by divorce, are legitimate."
In the record as a part of the evidence in the case there appears a duly authenticated copy of a court record from Germany, reading as follows:
"1 32/11
"E.R. 975/11 the 3rd of March, 1911.
"Grand Ducal County Court Mainz.
"Present: County Court Justice Dr. Kepplinger as Judge.
"In the guardianship of the illegitimate child Max Paul Noll, pending at the King's County Court at Hochst-on-the-Main, reference G. VII 289, appeared upon summons, giving proof of identity by his full knowledge of the matter and also of disposing capacity, Paul Wehr, born March 6, 1887, at Wilhelmsdorf, Bavaria, of the Evangelical Religion, son of *Page 251 
Mathaus Wehr, of no occupation, residing in Wilhelmsdorf. Upon the reading of the petition of February 23, 1911, besides the relative documents, the person appearing declared orally: I acknowledge to be the father of the boy named Max Paul, born to the seamstress Magdalena Maria Noll on the 29th of October, 1910, at Griesheim-on-the-Main, and as such, by the authority of the law, obligated to furnish maintenance to the child according to the social position of the mother. Accordingly, I obligate myself to pay unto this child, from the time of birth until the completion of his sixteenth year, as livelihood, quarterly and in advance an allowance of sixty marks. For the fulfillment of these obligations, I submit to the immediate execution of this document. I intend to marry the child's mother as soon as I find a suitable position. For the moment I have not the intention of immigrating to America.
"Read, accepted and signed
 "[Signed] PAUL WEHR. "[Signed] DR. KEPPLINGER.
"For the truth of the exemplification
"Reinmuth, Justice Inspector."
Paul Wehr, during his lifetime, frequently referred to Paul Noll as his son and the two corresponded by mail. Wehr sent money[2] to the son regularly for his support and maintenance, admitted to his neighbors that he was his father, and rather boasted of the fact. He often talked to his neighbors about his intention of bringing him to this country so that the two could be together. He exhibited to them a photograph of his son. This evidence was sufficient to meet the requirements of section 7074. The declarations of decedent were, of course, admissible to prove the relationship. (In re Wray's Estate, 93 Mont. 525, 19 P.2d 1051.)
But it is contended by appellant that even though it be[3] conceded that the case is one controlled by section 7074, this would simply establish the right of Paul Noll to inherit from his father's estate, and would not establish his right to nominate an administrator under section 10072. This evidence *Page 252 
establishes prima facie that Paul Noll is the child of Paul Wehr, within the meaning of sections 7074, 10072 and 10068, and that he is therefore entitled to nominate an administrator, he himself being a nonresident. Section 10068 simply recognizes the right of those having the preponderance of interest in the estate of one dying intestate to administer the estate. (Compare In reCameron's Estate, 86 Mont. 455, 284 P. 143, and Johnson v.Johnson, 15 R.I. 109, 23 A. 106.)
Section 7074 specifically provides that, when an illegitimate[4] child is acknowledged as there provided, he "inherits his or her [meaning the father or mother] estate, in whole or in part, as the case may be, in the same manner as if he had been born in lawful wedlock." The statute places such a child on the same footing as a child born in lawful wedlock, so far as the right of inheritance of his father's estate is concerned. (Compare Hicks v. Smith, 94 Ga. 809-819, 22 S.E. 153.) "There appears no substantial reason for drawing a refined distinction between the acknowledged illegitimate child and the lawful child, as between them and their father's estate." (In re Gorkow'sEstate, 20 Wn. 563, 56 P. 385, 389.) The acknowledgment places the child, "so far as the estate is concerned, on an equality in law with the legitimate children." (In re Rohrer'sEstate, 22 Wn. 151, 60 P. 122, 50 L.R.A. 350, and seeGreen v. Wilson, 112 Okla. 228, 240 P. 1051.)
Nor is it of any importance where or why the acknowledgment was made, so far as the right to inherit property situated at the domicile of the acknowledging parent is concerned. (In reRohrer's Estate, supra; Moen v. Moen, 16 S.D. 210,92 N.W. 13; Hall v. Gabbert, 213 Ill. 208, 72 N.E. 806, 809; In reLoyd's Estate, 170 Cal. 85, 148 P. 522; In re Beekman'sEstate, 160 Wn. 669, 295 P. 942; Blythe v. Ayres,96 Cal. 532, 31 P. 915, 19 L.R.A. 40.)
There are cases holding that it does make a difference where the written acknowledgment was made. Thus there is authority to the effect that where legitimation by written acknowledgment is relied on, the law of the father's domicile at the *Page 253 
time of making the acknowledgment determines the status of the child. Illustrative cases are the following: In re Presley'sEstate, 113 Okla. 160, 240 P. 89; Irving v. Ford,183 Mass. 448, 67 N.E. 366, 97 Am. St. Rep. 447, 65 L.R.A. 177; Lingen v.Lingen, 45 Ala. 410; and see generally 5 R.C.L. 920. We think the better reasoned cases take the view that the question of status for the purpose of inheritance depends upon the laws of the domicile of the intestate as to property there situated. Were the rule otherwise, then, when legitimation is claimed because of the subsequent marriage of the parents, the place of marriage would also become material. This cannot be so. What was said by the supreme court of Illinois in Hall v. Gabbert, supra, we think has application here. The court there said: "As we view the law, it is immaterial what the laws of Indiana or Ohio, or any other country, are or were. We look to our own law, and read it as it is written; then to the facts, and, if the facts bring the claimant within our law, then he is entitled to its benefits, whatever may be his status elsewhere."
As one of the rights of a legitimate nonresident child is that of nominating an administrator, and, since the acknowledgment of an illegitimate child places him on exactly the same footing as a legitimate one with respect to the estate of the acknowledging father, he also has the right to nominate an administrator to administer the estate. In other words, a child acknowledged in writing by the father, is a "child" within the meaning of sections 10068 and 10072. (Compare Hastings v. Rathbone,194 Iowa, 177, 188 N.W. 960, 23 A.L.R. 392; Wolf v. Gall, 32 Cal.App. 286,163 P. 346, 350.)
It is also contended that the written acknowledgment was not[5] admissible in evidence. It was a public writing (secs. 10542, 10544, Rev. Codes 1921), and, as such, admissible (secs. 10556, 10557, Id.).
The order appealed from is affirmed.
MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES MATTHEWS, STEWART and ANDERSON concur. *Page 254