33 Cal.2d 776 (1949)
Estate of FRANCIS W. FILTZER, Deceased. MARY LOUISE HARDER, Respondent,
v.
R. E. ALLEN, as Administrator With the Will Annexed, etc., Appellant.
L. A. No. 20497. 
Supreme Court of California. In Bank. 
Apr. 28, 1949.
 Voorhees, Stewart & Voorhees and Grace H. Voorhees for Appellant.
 Leonard Wilson and Arnold L. Leader for Respondent.
 SPENCE, J.
 This is an appeal from an order which directs the administrator-with-the- will-annexed of the estate of Francis W. Filtzer to pay to petitioner and respondent, Mary Louise Harder, a family allowance "for the support and maintenance" of Gregory Francis Filtzer, the minor child of petitioner and decedent. In challenge of the propriety of such order, there is argued: (1) the insufficiency of the evidence to sustain the application of the legitimating statute (Civ. Code, 85); and (2) the error of the trial court in awarding attorney fees in this proceeding. Neither of these points is well taken in view of the record and settled legal principles bearing thereon.
 Francis W. Filtzer died on or about May 9, 1947, leaving as his surviving spouse Evelyn R. Filtzer. In 1945, she had filed an action for divorce against said decedent and an interlocutory decree was granted in September of that year, but a few months thereafter the action was dismissed. In November, 1945, divorce proceedings were instituted between Mary Louise Harder, petitioner herein, and Hans Frederick Harder, and on January 3, 1946, an interlocutory decree was entered therein. On or about January 13, 1946, petitioner and Francis W. Filtzer, the decedent, went through a "marriage ceremony" in Tijuana, Mexico, and thereafter lived together as husband and wife in California. As a result of *778 that marital union a child was born on July 22, 1947--said Gregory Francis Filtzer. In pursuance of the provisions of section 85 of the Civil Code--that "The issue of a marriage which is void or annulled or dissolved by divorce is legitimate"--petitioner sought "a reasonable allowance" from the decedent's estate for the "support and maintenance" of said minor child, together with "attorney's fees ... on account of ... services ... rendered" in the proceeding.
 After hearing, the trial court made an order in which it found that petitioner and decedent "entered into a marriage ceremony in the State of Morales, Republic of Mexico, and that said marriage between said decedent and said petitioner, Mary Louise Harder, was, by said Mary Louise Harder, entered into in good faith, and that said marriage has never been dissolved, annulled or otherwise set aside. That following said marriage, said petitioner, Mary Louise Harder and said Francis W. Filtzer lived together in the City of Avalon, County of Los Angeles, State of California, as husband and wife, and engaged in the marital relationships of husband and wife." The court further found that petitioner was "entitled to [a] reasonable allowance out of the above entitled estate for the maintenance of said child, for the payment of doctor and hospital bills, and for the employment of attorneys to protect the interest of said child." Accordingly, the court ordered the administrator to pay to petitioner "$500.00 attorneys fees, $275.00 hospital and doctor bills, and $100.00 for the support and maintenance of said minor child ... each and every month ... until further order of the ... court." From such order the administrator has appealed.
 Section 680 of the Probate Code declares, as here material, that a minor child is "entitled to such reasonable allowance out of the estate [of its father] as shall be necessary for [its] maintenance according to [its] circumstances, during the progress of the settlement of the estate." Appellant contends that the evidence was insufficient to bring petitioner's claim within the scope of this section and therefore the order for an allowance to the minor child in question was improperly made. In this connection he maintains: (1) that no marriage was in fact proved; but (2) if a marriage actually did take place, it was not shown to have been contracted in good faith on the part of either party and the child accordingly would not be legitimate under section 85 of the Civil Code.
 The only testimony relative to the marriage was that of petitioner, who stated that she and the decedent "went *779 through" a "marriage ceremony" before an official in Tijuana, Mexico, who delivered to her "a document written in the Spanish language" purporting to evidence the ceremony just performed; and that thereafter she received through the mail "a document" purporting to be an official "translation" in English of the "marriage certificate." Each of these documents was introduced into evidence over objection that "no proper foundation [had been] laid" therefor. With regard to the issue of good faith, petitioner testified that decedent told her that "we could not get married anywhere in the State of California, but that we could go to Mexico and it would be valid in any state"; that whenever they talked of their forthcoming marriage, the decedent assured her "we could get married in Mexico and it [we] would be married anywhere"; that she relied upon these statements of the decedent, went through the "ceremony in reliance upon" them, and thereafter they "live[d] together as husband and wife," she "using [his] name."
 [1] In his attack upon the sufficiency of petitioner's proof of the marriage, appellant urges that "no evidence was adduced as to [the] laws" of the State of Morales, Mexico, and therefore "it must be presumed" that the laws of that state are "the same" as California; that "no evidence was presented that the parties had obtained a license to marry," that "the person ... perform[ing] the purported marriage ceremony was authorized by law" so to do, or "of his official capacity ... [or] identity"; and that "the court erred in receiving into evidence the purported marriage certificate and translation thereof." But such evidentiary considerations have no pertinency here in derogation of the force of petitioner's claim as directed solely to the establishment of the legitimacy of the minor child in question. A purported marriage which, by reason of a legal disability existing at that time [one of the parties already married], is rendered void [as creating a bigamous relationship between the parties] and so "deemed null in law" as regards them, nevertheless comes within the scope of the legitimating statute for the protection of the issue, who become "in relation to their father, the inheritors of his name, his heirs apparent, and entitled to look for, and demand from him, his care, maintenance and protection." (Graham v. Bennet, 2 Cal. 503, 506.) To like effect is the Estate of Shipp, 168 Cal. 640 [144 P. 143], where the offspring of a marriage "null in law" because of the "want of a license" was held legitimate in determining the *780 right of heirship upon distribution of the alleged father's estate.
 [2] Here the testimony of petitioner stands undisputed that she and the decedent actually went through what purported to be a marriage ceremony and received a certificate to that effect. As bearing upon her description of the ceremony, the purported marriage certificate and translation thereof were properly introduced into evidence. The authorities cited by appellant in challenge of their admissibility in the absence of "competent outside evidence" establishing their authenticity--that a "marriage certificate does not prove itself," and that "[p]roof of the signature of the person by whom it purports to have been signed, and of his authority to perform the marriage ceremony is necessary" (People v. Le Doux, 155 Cal. 535, 550 [102 P. 517]; People v. Jordan, 72 Cal.App. 406, 408 [237 P. 757])--are not applicable here for, as declared by the trial court, the documents were admitted in evidence "not ... to prove a valid marriage" but to support the testimony of petitioner that "she went through a ... marriage ceremony down there [Mexico] at that time," that "a certificate"--"whether or not ... valid"--"was presented to [her] when she entered into [the] marriage," and that she believed that she was legally married--the "effect on [her] mind." In short, the documents were relevant in substantiation of petitioner's claim, and in corroboration of her testimony, that she acted in good faith and assumed marital relations with the decedent in the belief that they were legally married.
 [3] It is frequently said that in order to legitimate the issue of a bigamous marriage--as is here involved--under statutes identical with or similar in wording to section 85 of the Civil Code, it must appear that at least one of the parties to such attempted marriage contracted in good faith, believing it to be a valid marriage. (See anno., 84 A.L.R. 499, 501; 3 Cal.L.Rev. 160, 162; 19 So.Cal.L.Rev. 457, 458.) However, here it is unnecessary to pass upon that question, for the trial court found, upon substantial evidence, that the "marriage was, by [petitioner], entered into in good faith" and that thereafter she and the decedent "lived together ... as husband and wife." Appellant attacks this finding upon the premise that the testimony of petitioner as to her good faith is so inherently improbable as to be unworthy of belief, and that this court should therefore disregard her statements and declare the findings of the trial court based thereon to be without *781 support in the evidence. But he cannot prevail in the light of the record sustaining the trial court's determination of the point as a question of fact.
 [4] Nor can it be said that the trial court erred in awarding attorney fees as part of the order granting the "family allowance." As appears from the record incident to the discussion of the point at the hearing, the payment of the attorney fees was ordered as "something ... necessary for his [the child's] support and maintenance, just the same as room and board or anything else." In so distinguishing the premise of the award of the attorney fees as in "the interest of the child," the court expressly limited its consideration to services rendered "in connection with [the] petition for family allowance."
 While appellant cites no authority holding that attorney fees are not allowable in a proceeding such as this, he relies on the general rule that "attorney's fees" are not recoverable unless "specifically provided for by statute ... [or] agreement ... of the parties" (Code Civ. Proc., 1021; see 7 Cal.Jur. 27, p. 286; Los Angeles Trust & Savings Bank v. Ward, 197 Cal. 103, 107 [239 P. 847]; City of Los Angeles v. Abbott, 217 Cal. 184, 194 [17 P.2d 993]; Murphy v. Murphy, 71 Cal.App. 389, 392 [235 P. 653]; Bank of America National Trust & Savings Assn. v. Moore, 18 Cal.App.2d 522, 529 [64 P.2d 460]; Exchange National Bank of Tulsa v. Ransom, 52 Cal.App.2d 544, 547 [126 P.2d 620]), except in "certain actions in equity"--representative or class suits, "where the courts will award" to the successful litigant from the fund preserved or protected "for the benefit of [himself] and others ... compensation ... for the services of [his] attorneys" as justice requires. (Estate of Marre, 18 Cal.2d 191, 192 [114 P.2d 591].) However, such authorities have no relevancy here, for the trial court did not deem "petitioner ... entitled to attorneys fees as attorneys fees" but correlated such added relief with the concept of an obligation assumed by her on behalf of the child "to defend his rights" to share in the decedent's estate. Thus, the trial court expressly declared its views to be that an "allowance" to petitioner "out of the [decedent's] estate ... for the employment of attorneys to protect the interest of said child" rested on the same principle as one made "for the payment of doctor and hospital bills" incurred on his behalf--"necessary" for his support and maintenance. *782
 In line with this theory of the trial court is the case of Arais v. Kalensnikoff, 10 Cal.2d 428 [74 P.2d 1043, 115 A.L.R. 163], where suit was instituted to compel a father to support his illegitimate child under section 196a of the Civil Code, which at that time [1937] read as follows: "The father as well as the mother, of an illegitimate child must give him support and education suitable to his circumstances. A civil suit to enforce such obligations may be maintained in behalf of a minor illegitimate child, by his mother or guardian, and in such action the court shall have power to order and enforce performance thereof, the same as under sections 138, 139 and 140 of the Civil Code, in a suit for divorce by the wife." After discussing the evidence sustaining the finding on the parentage issue against the defendant, the court stated at page 434: "Also, as section 196a of the Civil Code requires a father to support his child, the trial court had power to order him to pay attorney's fees in the action brought to enforce that obligation." In other words, the attorney's fees in an action prosecuted under authority of said section 196a were allowed as a part of the final judgment, not upon an express authorization of the statute but as a necessary element entering into considerations affecting the support and maintenance of the minor child. (See Kyne v. Kyne, 38 Cal.App.2d 122, 131-132 [100 P.2d 806], citing Paxton v. Paxton, 150 Cal. 667 [89 P. 1083]; also Kyne v. Kyne, 60 Cal.App.2d 326, 329 [140 P.2d 886].) Nor did the amendment of section 196a in 1939, by adding in the last clause a reference to section 137 and 137.5 of the Civil Code and, as construed in Carbone v. Superior Court, 18 Cal.2d 768, 770-772 [117 P.2d 872, 136 A.L.R. 1260], so giving to the trial court, in an action brought under that statute, a power which it did not theretofore have--the right to order attorney fees pendente lite in the same manner as "in a suit for divorce by the wife"--render "the law as it existed prior thereto and as it was interpreted by the courts ... obsolete so far as ... concerned ... attorney's fees ... assessed ... in the final judgment" (Andrade v. Newhouse, 54 Cal.App.2d 339, 345 [128 P.2d 927])--"[an] allowance ... predicated upon the theory that such legal services are part of the child's right to support" (ibid., p. 344; see, also, Berry v. Chaplin, 74 Cal.App.2d 669, 678 [169 P.2d 453]).
 It is true that the present action is not a filiation proceeding instituted against a living parent to enforce the obligation of support, but the same reasoning should apply *783 where the claim is against the estate of the deceased father under section 680 of the Probate Code, entitling the minor child "to such reasonable allowance out of the estate as shall be necessary for [its] maintenance according to [its] circumstances, during the progress of the settlement of the estate ..." (Emphasis added.) "Maintenance" and "support" are synonymous terms (Webster's New Int. Dict. 2d ed.), Unabridged, p. 1484; see In re Lazar, 37 Cal.App.2d 327, 332 [99 P.2d 342]), envisaging alike the same considerations necessary to sustaining a livelihood--and a child's need would in nowise differ according to whether the father was living or deceased, or whether it was the illegitimate or legitimate offspring of the parent. In this connection it is pertinent to note that "family allowances are strongly favored in the law (11A Cal.Jur. 507.) ... [statutes providing therefor] must be construed with the same spirit of liberality that prompted their enactment ... to guard and protect the family ..." (Estate of Jacobs, 61 Cal.App.2d 152, 155-156 [142 P.2d 454].) Accordingly, it would seem proper to conclude that in giving a child the right to an allowance for "maintenance" against his father's estate, the Legislature intended to comprehend in such term all such elements as would reasonably enter as factors essential to the satisfaction of that obligation, including an allowance for attorney fees necessarily incurred in the prosecution of the statutorily authorized proceedings. Thereby the same protection is given the child in the matter of provision for a livelihood whether sought under section 196a of the Civil Code or section 680 of the Probate Code, and the trial court's power to order the payment of attorney fees for services rendered in the prosecution of the proceedings on behalf of the child would be identical in either case, consistent with the finding that they were "necessary for his support and maintenance, just the same as room and board or anything else."
 In opposing these views, appellant unavailingly relies on certain observations in the Estate of Marre, supra, 18 Cal.2d 191, an appeal by a beneficiary of a trust from that portion of an order which denied his petition for an allowance from the trust funds with which to pay the fees of his attorney. The beneficiary had been successful in obtaining an order requiring the trustees of the trust to make payments to him for his support and maintenance, with the "amount" thereof, however, "to be determined in [their] sole judgment." (Estate of Marre, 18 Cal.2d 184, 190 [114 P.2d 586].) Consistent *784 therewith this court, in disposing of the controversy affecting the payment of the attorney fees, stated at pages 192- 193: "It is suggested that under the facts of this case attorney's fees constitute a necessary expense of the beneficiary and should, therefore, be paid from the trust funds as a portion of the amount due for support and maintenance. The amounts payable, however, are to be determined in the sole judgment of the trustees, and under the facts here presented no ground is shown entitling appellant to an order of the court awarding him attorney's fees." In other words, the refusal of a court award of attorney fees was placed, not on the ground that such allowance would be without the concept of "support and maintenance," but because it would be a payment the amount of which was for the trustees to determine in the exercise of their discretion. (Estate of Marre, supra, 18 Cal.2d 184, 190.) But the present case is distinguishable, for here the court itself had the duty to determine what would be "necessary" for the child's "maintenance"--and so was authorized to make "a reasonable allowance" therefor as the elements entering into such concept appeared from the evidence. The court here did not undertake to order the payment of attorney fees to petitioner as an item of "costs," so manifestly appellant's reference to the Estate of Bevelle, 81 Cal.App.2d 720 [185 P.2d 90], for its discussion of the impropriety of such procedure unless "expressly allowed by statute or agreed to by express contract" has no relevancy.
 The order subject of this appeal is affirmed.
 Gibson, C.J., Shenk, J., Carter, J., Traynor, J., and Schauer, J., concurred.