No. 12856

IN THE SUPREME COURT OF THE STATE OF MONTANA

1975

---

IN THE MATTER OF THE ESTATE
OF DAUENHAUER, ANTON DAUENHAUER
et al., Deceased.
KAREN MILLER and JERRY DAUENHAUER,

Plaintiffs and Respondents,

-vs-

DOROTHY DAUENHAUER, CHERALEE JOHNSON,
CHRISTOPHER DAUENHAUER, DENISE MAZZUCCA,
ROMONA PLANT, and ALLEN KELLER,

Defendants and Appellants.

---

Appeal from: District Court of the Fourth Judicial District,
Honorable Jack L. Green, Judge presiding.

Counsel of Record:

For Appellants:

M.Gene McLatchy argued, Missoula, Montana
H. J. Pinsoneault, Missoula, Montana
Julie A. Herak, Seattle, Washington

For Respondents:

Christian, McCurdy, Ingraham and Wold, Polson,
Montana
Douglas J. Wold argued, Polson, Montana

---

Submitted: April 10, 1975

Decided: MAY 20 1975

Filed: MAY 20 1975

Thomas J. Kearney
Clerk

Mr. Chief Justice James T. Harrison delivered the Opinion of the Court.

This is an appeal from a judgment of the district court, Lake County, which decreed that the only heirs of Anton Dauenhauer are Dorothy Dauenhauer, spouse, Karlene Miller, daughter, and Jerry Dauenhauer, son.

Anton Dauenhauer, also known as Tony Dauenhauer, died intestate on December 4, 1971. He was a resident of Montana and left an estate of real and personal property situated in Montana. The surviving spouse, Dorothy Dauenhauer, was appointed administratrix. In her Petition for Letters of Administration, she advised the probate court that the heirs consisted of herself, Karlene Miller and Jerry Dauenhauer, decedent's children by a previous marriage which terminated in divorce in 1944. Subsequently, the administratrix advised the court there were five additional children entitled to share in the estate, namely Ramona Plant, Allen Keller, Christopher Thorngren, Cheralee Johnson and Denise Mazzucca. Thereafter, plaintiffs filed a complaint to determine heirship under section 91-3801, R.C.M. 1947. During pretrial proceedings, a default judgment was entered against Ramona Plant and Allen Keller and a directed verdict was entered in favor of Dorothy Dauenhauer, Karlene Miller and Jerry Dauenhauer.

At trial, defendants Christopher Thorngren, Cheralee Johnson and Denise Mazzucca, sought to establish their heirship. Proof was presented by which they attempted to establish that the deceased lived with their mother, Mildred Thorngren, then known as Mildred Dauenhauer, as man and wife in California from 1947 to 1951 and that the deceased was their father. Decedent ceased living with Mildred Thorngren in 1951, and never lived with her or defendants again.

In its findings of fact, conclusions of law and judgment, the district court concluded the defendants are not heirs of the

decedent, Anton Dauenhauer, and that defendants

> "failed to show that (1) they, or any of them, are legitimate children of the decedent, or (2) that the decedent acknowledged, in a writing signed by the decedent in the presence of a competent witness, that said Defendants, or any of them, were illegitimate children of said decedent, or (3) any other facts sufficient to establish and perfect a claim of heirship from this decedent."

On appeal these issues are presented for review:

(1)  Whether the local law of Montana or that of California is to be applied to determine defendants' legitimacy?

(2)  If the law of California is to be applied to the legitimacy issue, whether defendants are legitimate or have been legitimated pursuant to that law?

(3)  If defendants are illegitimate, whether the decedent, during his lifetime, complied with the requirements of section 91-404, R.C.M. 1947?

First, we note it has not yet been determined that defendants are, in fact, the children of the decedent. Although the record would support such a finding, nothing we say herein should be construed as to require such a finding. That is a matter to be determined by the district court on remand.

For purposes of succession, the law of Montana distinguishes between legitimate and illegitimate children of a decedent. Section 91-404, R.C.M. 1947. Our initial inquiry must be to determine whether the law of Montana or California is to be applied in the determination of whether defendants are the legitimate or illegitimate children of the decedent. Defendants were born in California and are, to this day, California domiciliaries. The relationship between the decedent and defendants' mother occurred solely in California. Other than this lawsuit, defendants have had no contact with Montana. Certainly it cannot be intimated that the mere fact that decedent later traveled to Montana and

- 2 -

died here, in and of itself, renders defendants legitimate.

We hold the local law of California governs the issue of defendants' legitimacy. Restatement, Conflict of Laws, §§ 137-141; 1 Restatement of Conflict of Laws 2d, § 6; 2 Restatement of Conflict of Laws 2d, §§ 287, 288.

Defendants contend Montana decisions in In re Wray's Estate, 93 Mont. 525, 540, 19 P.2d 1051; and In re Wehr's Estate, 96 Mont. 245, 253, 29 P.2d 836, require that we apply Montana law to the legitimacy issue. We disagree and find these two decisions to be consistent with our holding today.

In Wray's Estate, the child was born illegitimate in Nebraska. The father later moved to Wyoming and the mother and father intermarried there. The father subsequently died domiciled in Montana. On the subject of the legitimation of the child, this Court looked to Wyoming law, stating:

> " * * * upon the marriage of the father and mother, the law of the domicile of the father is controlling."

This Court applied the predecessor of section 61-123, R.C.M. 1947, "A child born before wedlock becomes legitimate by the subsequent marriage of its parents" solely because there was an absence of proof as to the Wyoming law and it was presumed to be the same as Montana's. Section 61-123, R.C.M. 1947, being a statute of legitimation, the Court properly looked to the law of the place where the legitimating act occurred.

In Wehr's Estate, the illegitimate child of the decedent was born and domiciled in Germany. Before moving to Montana, in a writing executed in Germany, the decedent acknowledged the illegitimate child as his own. This Court held the acknowledgment sufficient under the predecessor of section 91-404, R.C.M. 1947, to entitle the child to share in the decedent's estate and nominate an administrator. The portion of section 91-404 pertaining

- 3 -

to acknowledgments being a statute of succession, the Court properly looked to local Montana law. While this Court stated there that "the question of status for the purpose of inheritance depends upon the laws of the domicile of the intestate as to property there situated" that statement must be viewed as mere dictum, being broader than the issue at hand.

Here, it is apparent from the record that the district court never considered the issue of whether the defendants could be either legitimate or legitimated under California law, despite the failure of decedent and their mother to enter into any formal marriage ceremony. The district court, and the attorneys too, for that matter, apparently believed that such failure rendered defendants, per se, illegitimate. We find it necessary to remand this cause to the district court for a determination of whether defendants are legitimate or have been legitimated under California law.

From 1933 to 1969, California Civil Code, § 85, read:

"The issue of a marriage which is void or annulled or dissolved by divorce is legitimate."

From 1945 to date, California Civil Code, § 55, now Civil Code, § 4100, reads:

"Marriage is a personal relation arising out of a civil contract, to which the consent of the parties capable of making that contract is necessary. Consent alone will not constitute marriage; it must be followed by the issuance of a license and solemnization as authorized by this code * * *."

In In re Filtzer's Estate, 33 Cal.2d 776, 205 P.2d 377, 379, the California Supreme Court affirmed an award of a reasonable allowance for support and maintenance to the child of the decedent father. The mother and father had entered into a ceremonial Mexican marriage, and thereafter lived together as man and wife. The father was, at all times until his death, legally married to another woman. The validity of the Mexican marriage

- 4 -

was not relevant to the child's claim for the support allowance, the Court stated:

> " * * * in order to legitimate the issue of a bigamous marriage--as is here involved--under statutes identical with or similar in wording to section 85 of the Civil Code, it must appear that at least one of the parties to such attempted marriage contracted in good faith, believing it to be a valid marriage. See annotation, 84 A.L.R. 499, 501 * * *."

While the opinion states the trial court found that the mother and father thereafter "lived together * * * as husband and wife", that finding appears to have been of mere evidentiary value.

For reasons not pertinent here, defendants in the district court relied on a purported common law marriage between the decedent and their mother. Common law marriages are not valid in California. Norman v. Norman, 121 Cal. 620, 54 P. 143. However, in attempting to establish a common law marriage between the decedent and their mother, defendants placed into evidence certain facts which indicated the mother, Mildred Thorngren, believed that she and decedent were validly married. Just as the validity of the Mexican marriage in Filtzer's Estate was not determinative of the issue of good faith, likewise the validity of the attempted union between decedent and defendants' mother in California and whether or not it would be a valid common law marriage under the laws of Montana, is not determinative of this appeal. If the district court, on remand, finds that the mother of defendants believed in good faith that she and decedent were validly married, then the children of that union are legitimate.

The law of California further provides in its Civil Code § 230:

> "The father of an illegitimate child, by publicly acknowledging it as his own, receiving it as such, with the consent of his wife, if he is married, into his family, and otherwise treating it as if it were a legitimate child,

- 5 -

thereby adopts it as such; and such child is
thereupon deemed for all purposes legitimate
from the time of its birth."

A number of California cases have held that the father
of an illegitimate child may adopt it, pursuant to § 230, so that
it will be deemed legitimate, though the father is not married
to the mother, by receiving it into his home and otherwise
fulfilling the statutory requirements though the home into which
he receives it is one in which he and the mother are living. In
re McGrew, 183 Cal. 117, 190 P. 804; Serway v. Galentine, 75
Cal.App.2d 86, 170 P.2d 32. Here, the evidence in the record,
if believed, is sufficient to warrant a finding that decedent,
with respect to Cheralee Johnson and/or Christopher Thorngren,
fulfilled the requirements of Civil Code § 230 and legitimated
them. Should the district court, on remand, so find, then they
are entitled to an intestate share of decedent's estate. Denise
Mazzucca is not entitled to the benefit of this statute since
the evidence shows that decedent left the mother three weeks
prior to Denise's birth.

While the exact point has not been decided by the Supreme
Court of California, that Court's liberality in finding legiti-
macy, as exemplified by the foregoing discussion, leads us to
believe that it would follow the reasoning enunciated in Clark--
The Law of Domestic Relations, pp. 132,133, (West 1968):

"A larger number of states have enacted broader statutes
of a second type, which simply provide that the children
of void or voidable marriages or of marriages deemed
null in law are legitimate. At first glance this sort
of statute appears reasonably satisfactory, but it too
raises questions of construction which any well-drawn
statute ought to avoid. The term 'voidable marriages'
is clear enough and causes no trouble. But what is
meant by 'void marriage'? * * * does it legitimize the
children of a purported common law marriage which is
invalid because the state does not recognize common
law marriage? Or does it legitimize the children of a
liaison which was concededly not a marriage, but which
was thought by some friends of the parties to be a
marriage, and which lasted for an appreciable time?

> * * * If words are given their usual meaning,
> a void marriage is a non-existent marriage.
> This being so, the literal meaning of the
> statutes is that all children of non-existent
> marriages are legitimate.  Presumably no court
> would so construe the statutes.  The most
> sensible construction, and the one most in accord
> with the statutory purpose, is that of the Santill
> case [Santill v. Rossetti, 178 N.E.2d 633 (Ohio
> Com. Pl. 1961)], namely, that such statutes
> legitimize the children of all de facto marriages,
> of all relationships which look like marriages
> and in which the parties behave as husband and
> wife."

The record in the instant appeal is sufficient to support a finding there was a de facto marriage between decedent and defendants' mother.  Therefore, if the district court should, on remand, find defendants are the issue of such a de facto marriage, then they are entitled to be treated as legitimate heirs of decedent.

Defendants next contend that, even if they be found to be illegitimate, they are entitled to inherit from decedent because of his compliance with section 91-404, R.C.M. 1947, which reads:

> "Every illegitimate child is an heir of the person
> who, in writing, signed in the presence of a
> competent witness, acknowledges himself to be the
> father of such child * * *".

In support defendants introduced a copy of an application record for the University of California Hospital out-patient department.  On the face of the document was the name of the patient, Mildred Bernice Dauenhauer, and listed members of the household as "Tony husb", "Cheralee dau 16 mos.", and "Chris Son (born 8-26-51)".  Chris was born August 26, 1950.  The application was dated "9-8-48".  At the line entitled "Information Given by" was the signature "Tony Dauenhauer".  Mildred Thorngren testified that the application was signed by the decedent in her presence on September 8, 1948, while she was attempting to get obstetrical care while pregnant with Cheralee.  At that time, none of defendants were

yet born. There is no evidence as to when the entries "Chera-lee dau 16 mos." and "Chris Son (born 8-26-51)" were made but it must have been at some date subsequent to September 8, 1948. Thus it is evident that decedent, by this document, did not meet the requirements of section 91-404, R.C.M. 1947. We do not hold that decedent could not have acknowledged Cheralee as his child prior to her birth, merely, that by this document, he did not do so.

For the foregoing reasons, this cause is remanded to the district court for further proceedings not inconsistent with this opinion and for a determination of (1) whether any or all of the defendants are children of decedent; (2) whether any or all of defendants are legitimate because of California Civil Code § 85 and the interpretation placed thereon by the California courts; (3) whether Cheralee and/or Christopher have been legitimated because of California Civil Code § 230 and the interpretation placed thereon by the California Courts; and (4) whether any or all of defendants are the legitimate issue of a de facto marriage.

_____
Chief Justice

We concur:

_____

_____

_____
Justices