[No. H007579. Sixth Dist. July 25, 1991.]

Estate of LEONARD J. LICCARDO, Deceased.
KATHLEEN A. LICCARDO, as Executrix, etc., Petitioner and
Respondent, v.
EDMOND MIRABITO, Objector and Appellant.

**COUNSEL**

Albert K. Martin for Objector and Appellant.

Caputo, Liccardo, Rossi, Sturges & McNeil, R. Donald McNeil and Robert C. Colyar for Petitioner and Respondent.

**OPINION**

**COTTLE, J.**—This in an appeal from an order setting apart a probate homestead pursuant to Probate Code section 6520.[1] For reasons we shall explain, we reverse the order.

---

[1]All further statutory references are to the Probate Code.

Leonard Liccardo, an attorney, died on July 16, 1988, leaving his wife, Kathleen, who was eight months pregnant, and their two minor children. Liccardo also had four children from a previous marriage, all of whom were adults. On September 12, 1988, Kathleen filed a petition for probate of will in the Santa Clara County Probate Court. She was appointed the estate's personal representative on October 17, 1988.

At the time of his death, Liccardo was being sued by one of his clients, Edmond Mirabito. Mirabito claimed Liccardo swindled him and certain members of his family out of over $2.5 million. On November 30, 1988, Mirabito filed a creditor's claim against the estate based on the pending lawsuit. The claim was rejected.

Shortly before his death, Liccardo deeded his home, which was his sole and separate property, to himself and his wife as community property. After his death, Kathleen petitioned the probate court for a community property spousal set-aside order, determining property passing to the surviving spouse without administration pursuant to section 13500 and confirming property belonging to the surviving spouse pursuant to sections 100 and 101. The order was granted on December 23, 1988, and title to the home was thereafter placed in Kathleen's name only.

In February 1990, a jury in San Mateo County returned a verdict, in the amount of $2,510,000, against the estate and in favor of Mirabito in his fraud action against Liccardo. On April 2, 1990, Mirabito recorded an abstract of judgment with the County Recorder of Santa Clara County.

On June 15, 1990, Kathleen, as the estate's personal representative, filed the inventory and appraisement, listing assets of $8,266. Two weeks later, she petitioned the court to set apart a probate homestead for her and her three minor children pursuant to section 6520. The property she requested to be set apart was the family's home in Saratoga which had passed to her in December 1988, without administration, pursuant to sections 13500, 100, and 101. Creditor Mirabito opposed her petition on grounds, inter alia, that the property was not in the probate estate and, thus, not within the probate court's jurisdiction.

At the first hearing on the petition, the court ruled that it did have jurisdiction to hear the petition and to determine whether petitioner was entitled to the relief requested. The court scheduled an evidentiary hearing for two weeks later to hear evidence on the factors the court is required to consider in ruling on such a petition. These factors include: the needs of the surviving spouse and minor children, the liens and encumbrances on the property, creditors' claims, the needs of decedent's heirs and devisees, and

decedent's intent with respect to the property in the estate. (§ 6523, subd. (a).)

At the hearing, Kathleen testified that she had lived in the home since 1980 and that each of her children lived there since birth. She testified that it was her husband's separate property until shortly before his death. She admitted it was appraised at $1.8 million although she believed the house alone was worth about $1.2 million. She had attempted to subdivide the property and sell two other lots for an additional $750,000. The 5,000-square-foot house had a detached garage and a swimming pool and was situated in Saratoga. Kathleen testified that the attorney who took over her husband's practice had paid her $73,000 over the prior two years for collections on cases Liccardo had pending when he died. She was unaware how much more the attorney would pay her. She stated that she received $500,000 in life insurance, $1,300 per month in Social Security, $500 per month in earnings, and $350 per month in interest income.

A land use consultant testified that the Saratoga property could be subdivided without a great deal of difficulty because Kathleen had already done most of the groundwork. He estimated it would cost $150,000 to $200,000 to complete the process. Another client of Liccardo's testified, stating that he had filed a creditor's claim against the estate for $120,000. Mirabito did not testify but his abstract of judgment was entered into evidence.

■■ ■ ■ On August 21, 1990, the court issued its order, granting Kathleen and her children the probate homestead, but limiting its duration to three years.[2] From this order, Mirabito appeals.

Sections 6520-6528 permit the probate court to "select and set apart one probate homestead" out of the probate estate for the use of the surviving spouse and/or the minor children of the decedent. (See also *Estate of Schmelz* (1968) 259 Cal.App.2d 440, 443-444 [66 Cal.Rptr. 480].) Typically, the selected homestead is the family's residence, but it may be any property subject to probate court administration. Since preexisting liens and encumbrances may be satisfied out of the probate homestead right (§ 6526, subd. (a); *Estate of Huelsman* (1899) 127 Cal. 275 [59 P. 776]), the probate court will generally select as the probate homestead property that is free from liens and encumbrances even if it is not the family home.

■ In the instant case, there was no real property within the probate estate which the probate court could select to set apart for a probate

---

[2]The length of a probate homestead is to be determined by the probate court and set forth in its order. (§ 6524.) The determination lies within the sound discretion of the court and will not be upset absent an abuse of discretion. (*Estate of Moskowitz* (1966) 247 Cal.App.2d 499 [55 Cal.Rptr. 572].)

homestead. As Ross and Moore observe in California Practice Guide: Probate (The Rutter Group 1987) "only property before the court—i.e., *included in the inventory*—qualifies; again, joint tenancy property, or property passing under Prob. C. § 13650 summary administration, would not be eligible because it is not part of the probate estate." (¶ 7:34, p. 7-8, italics in original; see also *Estate of Klumpke* (1914) 167 Cal. 415, 420 [139 P. 1062].)

Kathleen maintains, nevertheless, that the court's order was correct. She claims (1) the filing of the inventory does not preclude setting aside a probate homestead, and inventories may be amended; (2) the order confirming passage of property to the surviving spouse without administration does not deprive the court of jurisdiction; and (3) the probate homestead statutes were enacted to benefit decedent's survivors, not to punish them simply because they utilized the summary administration procedure set forth in section 13650 et seq. These arguments lack merit.

It is correct that a second inventory could be ordered if it was shown that the first inventory did not contain all the property of the decedent. (*Phelan* v. *Smith* (1893) 100 Cal. 158, 169 [34 P. 667].) However, a second inventory here would do Kathleen no good. The Saratoga house cannot now, in 1991, be added to the estate inventory. Nor could it have been added in 1990 when the first inventory was filed and when Kathleen petitioned for a probate homestead set apart. The court's order determining property passing to the surviving spouse under section 13500 and confirming property belonging to the spouse under sections 100 and 101 was issued in 1988. "Upon becoming final," i.e., after the time for appeal has run or after an appeal is exhausted, an order under section 13656 "shall be conclusive on all persons whether or not they are in being." (§ 13657.) The order became final in early 1989; consequently, Kathleen could not have changed her mind in 1990 and listed the property on the estate's inventory. Nor could the court have allowed her to file an amended inventory adding it.

Kathleen's second argument is merely a statement of her position. She claims, without citation to statutory or case law authority, that "the order confirming passage of property to the surviving spouse without administration does not deprive the court of jurisdiction to set aside a probate homestead for minor children and a spouse." (Capitalization omitted.) However, as noted above, the statutory scheme permitting the property to pass to Kathleen without administration also kept the property out of the probate estate. It is only from the probate estate that the court may select one property for a probate homestead.

Kathleen's third argument is that granting a probate homestead in this case would further the legislative goal of providing the survivors a place to

live, free from the reach of creditors. We certainly do not dispute this legislative purpose in enacting the probate homestead provisions. (See e.g., *Estate of Murray* (1982) 133 Cal.App.3d 601 [183 Cal.Rptr. 924]; *Estate of Filtzer* (1949) 33 Cal.2d 776 [205 P.2d 377].) However, the probate court can only effectuate this purpose as to property within its administration. Here, there was no real property subject to administration which could be set apart for the benefit of the wife and minor children.

Kathleen also argues that *her* actions (i.e., obtaining the order confirming passage of the property without administration) should not be used to defeat *her children's* rights. She points out that the section 13650 summary administration procedure is optional. Under section 13502, she could have instead elected to subject her interest in the community and/or decedent's interest in the community, to formal probate administration. Had she done so, the property would have been included in the probate estate and a fortiori might have been selected by the court as a probate homestead. She points to language in *Phelan* v. *Smith, supra,* 100 Cal. at page 166 that the right to a homestead belongs to the wife and minor children jointly and no individual act by the wife of selling property before application for a probate homestead can waive the rights of the minor children to the probate homestead.

*Phelan* was an ejectment action brought by the surviving wife against an individual to whom she had deeded certain property in Los Angeles in 1885. The property was included in the probate estate. The wife did not report the sale to the probate court, which neither ordered nor authorized it. The buyer had been in possession of the land since 1883 (pursuant to an earlier agreement with the wife). The wife in the meantime purchased other property in Pomona. Three years later, the court set apart the Los Angeles property as a homestead. The following year, a decree of distribution was given and made by which the wife was awarded three-quarters of the estate and the child one-quarter. In 1890, less than five years after execution of the deed, the wife brought her action to eject the purchaser of the property. He collaterally attacked the probate court's order setting apart the probate homestead. The court pointed out that he could prevail only if he demonstrated errors rendering the decree void, not simply voidable. It found no such fundamental errors in that case. The court pointed out that the right to a homestead belongs to the wife and minor children jointly and no individual act by the wife of selling property before application for a probate homestead can waive the rights of the minor children of the probate homestead. The significant distinction between that case and the instant one is that in *Phelan,* the property which was set apart as a probate homestead was included within the probate estate and thus subject to the court's administration. That is not the situation here.

The court had no jurisdiction to impose a probate homestead on property not within its supervision. The order of the court setting apart a probate homestead for Kathleen and her minor children until August 21, 1993, is reversed.

Agliano, P. J., and Elia, J., concurred.